193 So. 702

**COLLINS v. COLLINS.**

No. 35385.

Jan. 9, 1940.

Hawkins & Tritico, of Lake Charles, for plaintiff-appellee.

Plauché & Plauché, of Lake Charles, for defendant-appellant.

O'NIELL, Chief Justice.

The defendant is appealing from a judgment granting his wife a separation from bed and board on the ground of cruel treatment. The judgment allows the wife half of certain property and :funds declared to belong to the matrimonial community, and allows her $250 for her attorneys' .fee, to be paid out of the community funds. The plaintiff, answering the appeal, asks for an increase of the allowance to $500.

The defendant, in his answer to the suit, denied that he had been cruel to his wife, and, in the alternative, pleaded that he and she had become reconciled after the quarrels which she complained of in this suit, and that she then condoned whatever offenses he had committed.

The evidence sustains the wife's charge that the husband treated her cruelly .on several occasions; but it is not necessary now to decide whether this ill-treatment was of such a nature as to render their living together intolerable. The reason why that question is eliminated is that the testimony convinces us that there was a reconciliation between the parties after the suit was filed, and that the wife then condoned whatever offense or offenses the husband had committed in the way of ill-treatment of her. It is declared in articles 152 and 153 of the Civil Code that an action for separation from bed and board is barred by a reconciliation of the parties if the reconciliation is had before the suit is filed, and that the action is abated if a reconciliation is had after the suit is filed; and it is declared in article 154 that the same rule applies to an action for divorce.

The defendant in his testimony cites several instances in which he claims there was a reconciliation subsequent to all of the quarrels complained of in the plaintiff's petition. She denies that there was ever a reconciliation or condonation on her part, and the evidence seems to support her denial as to every instance cited by the defendant except as to one instance.

That was on Sunday, February 5, 1939—after this suit was filed, and only three days before the trial commenced. The plaintiff and defendant had lunch together, that day, at a restaurant conducted in connection with a drug store in Lake Charles, where they resided. The wife came to the restaurant first and took a seat at a table, but did not order lunch until her husband arrived, a few minutes afterwards—possibly thirty minutes afterwards. He immediately took a seat at the same table, indicating that there was a previous understanding that he and his wife would lunch together that day. According to the testimony of the waitress, who knew both parties, they talked together as if on friendly terms during the meal; and at the end of the meal the waitress made only one check, according to her custom in serving a married couple. The wife then drove off in her car and he in his. That evening, at nightfall, the plaintiff in her car and the defendant in his car drove out to the suburbs of the city, to a somewhat secluded place on the roadside, where they parked their cars, and had an affaire d'amour, in his car. She admitted in her testimony that she and her husband had had the rendezvous. Her only explanation is that he threatened to kill her if she refused to meet him at the appointed time and place. Her testimony on the subject convinces us that she was mistaken in her recollection that she was alarmed by threats on the part of her husband when she went to keep her tryst with him in his automobile on the roadside. It would serve no good purpose to state in detail the testimony on the subject. It is sufficient to say that there is no doubt that, on the occasion in question, after this suit was assigned for trial, and only three days before the trial commenced, there was a complete reconciliation of the quarrels and complaints which the parties had had. The wife's conduct towards her husband on that occasion was a condonation of all offenses on his part that she had knowledge of, and was not consistent with an intention on her part to prosecute her suit for separation from bed and board. It is not contended that the defendant was guilty of any offense against his wife after the reconciliation, or that any offense was concealed from her, or was not known by her, at the time of the reconciliation.

■ Counsel for the plaintiff cite the following decisions to support their argument that, even if the court should conclude that the plaintiff's meeting with her husband in his automobile on the Sunday evening referred to was voluntary on her part, and was not influenced by threats or fear, the incident did not constitute such a reconciliation as should put an end to the wife's suit for separation from bed and board, viz.: Terrell v. Boarman, 34 La. Ann. 301; Mack v. Handy, 39 La.Ann. 491, 2 So. 181; Martin v. Martin, 151 La. 530, 92 So. 46; Dupuy v. Pertuit, 154 La. 798, 98 So. 250. These decisions are not appropriate to the present case. Terrell v. Boarman and Mack v. Handy are authority for the proposition only that a wife's forbearance and endurance of cruel treatment on the part of her husband for a long time before suing for a separation from bed and board is not to be considered as a condonation of the ill-treatment, or

a reconciliation, as it is called in article 152 of the Civil Code. These decisions are merely a restatement of the provisions of article .153 of the Civil Code, that after a reconciliation is had the party who was aggrieved is precluded from instituting or prosecuting a suit for separation from bed and board except for a cause arising subsequent to the reconciliation, but that, in such a suit, founded upon a subsequent cause of action, the plaintiff may make use of the previous ill-treatment to support the new suit, or cause of action. The expression in the Code is "to corroborate his new action." But that is a translation of the phrase used in the French text of article 150 of the Code of 1825, and in article 273 of the Civil Code of France,— viz: "pour appuyer nouvelle demande". In Spiers & Surenne's French Dictionary, the phrase "pour appuyer" is defined as "for the support of", or "in support of". The word "corroboration" is not given as one of the definitions of "appuyer". In Cachard's Translation of the Civil Code of France, the phrase "pour appuyer nouvelle demande" is translated literally, as "in support of his new action". All of which is in line with the common-law definition that condonation, in its technical sense, is the forgiveness, either express or implied, by a husband of his wife, or by a wife of her husband, of all offenses known to the forgiver, with the implied condition that the offense or offenses shall not be repeated. 9 R.C.L. 379; Ballentine's Law Dictionary; Bouvier's Law Dictionary; Black's Law Dictionary; Webster's New International Dictionary; verbo, condonation. There are some expressions in the opinion rendered in Martin v. Martin, cited by counsel for the plaintiff in this case, which, if considered without reference to the facts of the case cited, would seem to support the argument that there was no reconciliation in this case, in the meaning of articles 152 and 153 of the Civil Code. But the facts of the case cited show that the acts which the defendant construed as a reconciliation and condonation on the part of his wife, and as a cause for an abatement of her suit for separation from bed and board, were merely acts of kindness and sympathy, and did not constitute a reconciliation or condonation in any sense. In Dupuy v. Pertuit, after the wife sued for a separation from bed and board on the ground of habitual intemperance and cruel treatment, the parties became reconciled and the wife withdrew her suit, and she had the fact of the reconciliation written in the judgment dismissing her suit. Five years afterwards she renewed her suit for the same offenses which had been committed previous to the filing of the first suit, and which were the basis for the first suit, and it was held, of course, according to articles 152 and 153 of the Civil Code, that the wife had abandoned her right of action. In the opinion rendered in the case Martin v. Martin was cited merely to show the distinction between that case and Dupuy v. Pertuit.

Although we have concluded that the plaintiff's suit should be dismissed for having become abated by the reconciliation of the parties, we have concluded also to put the costs of this litigation upon the matrimonial community, under authority of Section 2 of Act No. 229 of 1910, giving

to the appellate courts the authority to assess the costs of court in any case against any party to the suit, as in the court's judgment may be deemed equitable. It was the husband's fault that provoked the bringing of the suit, and it is as much to his credit as to the wife's that the suit is ended by the reconciliation of the parties. Hence, according to the doctrine of Snow v. Snow, 181 La. 204, 159 So. 323, the matrimonial community should bear the costs.

And, according to the ruling in Spiller v. Spiller, 170 La. 813, 129 So. 212, and Starns v. Starns, 176 La. 610, 146 So. 165, the wife cannot obtain judgment against her husband or against the matrimonial community for the amount of her attorney's fee in an unsuccessful suit for separation from bed and board or for a divorce, because the community is not dissolved by the judgment rendered in the case. The attorney or attorneys for the wife, however, may sue the husband for the fee and recover on a quantum meruit. Hence it is not necessary to consider the demand of the wife in her answer to the appeal, for an increase of the amount allowed for her attorneys' fee—or to consider the plea of the husband that the answer to the appeal was not filed within the three days allowed by article 890 of the Code of Practice, as amended by Act No. 103 of 1908.

The judgment appealed from is annulled and the suit is ordered dismissed for having become abated by the reconciliation of the parties. The court costs are to be borne by the matrimonial community.

ODOM, J., takes no part.