4-7101                                    172 S. W. 2d 243

Opinion delivered June 14, 1943.

*Steel & Edwardes,* for appellant.

*Lincoln & Harris* and *Ned A. Stewart,* for appellee.

ROBINS, J. The determination of the question presented on this appeal requires a construction of the following subdivision (No. 7) of § 2 of Act No. 20 of the General Assembly of Arkansas, approved January 27, 1939, entitled "An Act to Amend § 4381 of Pope's Digest of the Laws of the State of Arkansas, and for Other Purposes": "Where either husband or wife have lived separate and apart from the other for three consecutive years, without cohabitation, the court shall grant an absolute decree of divorce at the suit of either party, whether such separation was the voluntary act or by the mutual consent of the parties, and the question of who

is the injured party shall be considered only in the settlement of the property rights of the parties and the question of alimony.''

The lower court dismissed for want of equity appellant's complaint, in which he prayed for an absolute divorce from appellee. The ground on which appellant sought this divorce was that appellant and appellee had lived separate and apart without cohabitation for more than three consecutive years next before the institution of his suit. Appellee denied that any such separation had existed and alleged that appellant and appellee had cohabited a few days before the institution of the suit. She admitted that she and appellant had not, since 1935, lived under the same roof, but she testified that from time to time, while they were living in separate dwelling places in the city of Texarkana, appellant visited her at night and that on several occasions she had visited him at his room at night, and that on each of these visits, one of which had occurred only a short time before the filing of the suit, she and her husband resumed their marital relation, at least for the time being. Appellant denied that any of these acts of marital intercourse occurred after the separation, but the testimony of appellee on this phase of the case was somewhat corroborated by other testimony, and it is not seriously urged by appellant in this court that the chancellor's finding that these acts did occur is against the preponderance of the evidence.

To reverse the decree of the lower court appellant urges here that, even if the testimony of appellee as to these acts of marital intercourse is true, appellant is nevertheless entitled to a divorce because the acts testified to by appellee did not constitute cohabitation. It is insisted by appellant that ''cohabitation,'' as used in the above-quoted statute, means living together, and that proof of isolated or intermittent acts of intercourse between a husband and wife does not establish cohabitation within the meaning of this statute.

The word ''cohabitation'' has two well-recognized meanings. Under the strict or derivative definition ''co-

habitation'' means living together in the same abode, while under the other, or popular, definition ''cohabitation'' means sexual intercourse. Many cases decided by this and other courts in which the literal or derivative definition of the word ''cohabitation'' has been sustained. by the court are cited in the exhaustive brief of appellant. The Arkansas cases, in which the literal or derivative definition of the word ''cohabit'' was sustained, are: *Sullivan* v. *State,* 32 Ark. 187; *Taylor* v. *State,* 36 Ark. 84; *Bush* v. *State,* 37 Ark. 215; *Turney* v. *State,* 60 Ark. 259, 29 S. W. 893; and *Hovis* v. *State,* 162 Ark. 31, 257 S. W. 363. In all of these cases, except that of *Hovis* v. *State,* the court had under consideration § 3287 of Pope's Digest which provides: ''If any man and woman shall cohabit together as husband and wife without being married, each of them shall be deemed guilty of a misdemeanor, . . .'' In the Hovis case the statute involved was §§ 2601 and 2602 of Crawford & Moses' Digest (§§ 3288 and 3289 of Pope's Digest) forbidding ''concubinage,'' which was defined by § 2602 (§ 3289 of Pope's Digest) as follows: ''The living together or cohabitation of persons of the Caucasian and of the Negro race shall be proof of the violation of the provisions of § 2601 (§ 3288 of Pope's Digest). For the purpose of this act, concubinage is hereby defined to be the unlawful cohabitation of persons of the Caucasian race and of the Negro race, whether open or secret.'' It is apparent that by these acts the legislature was not seeking to punish occasional wrongful acts of intercourse between the sexes, but was forbidding a meretricious relation which, because of its continuance, was a scandal and an offense to the sense of decency of the community. The holding of this court in these cases that ''cohabitation'' meant more than occasional wrongful acts was in accord with the plain meaning of the term as shown by the connection in which it was used by the legislature, and in our opinion these decisions do not sustain the contention of appellant in the case at bar..

Examples of cases in which courts have adhered to the popular definition of ''cohabit'' and ''cohabitation'' are: *DeBerry* v. *DeBerry,* 115 W. Va. 604, 177 S. E. 440;

*Thorp* v. *Thorp,* 165 Wash. 255, 4 Pac. 2d 1103; *State* v. *Freddy,* 117 La. 121, 41 S. 436, 116 Am. St. Rep. 195; *Burns* v. *Burns,* 60 Ind. 259; *State* v. Way, 5 Neb. 283; *Bracksmayer* v. *Bracksmayer,* 22 N. Y. S. 2d 110; and *Herrman* v. *Herrman,* 156 N. Y. S. 688, affirmed 176 App. Div., 914, 162 N. Y. S. 1123.

In the DeBerry case, *supra,* the court said: "The literal or derivative meaning of the word 'cohabit' is to live together while its popular and often legal significance is to copulate. The latter interpretation was, in our opinion, intended by our legislature."

In the Thorp case, *supra,* the Washington Supreme Court held that where the husband and wife sporadically spent the night together this amounted to a cohabitation. To the same effect is the decision in the case of *Walker* v. *Walker,* 151 Wash. 480, 276 Pac. 300.

The Louisiana Supreme Court, in the case of *State* v. *Freddy, supra,* held, in construing a statute of that state declaring that persons who, within certain degrees of consanguinity, should intermarry or cohabit without marriage were guilty of incest that the word "cohabit" meant sexual intercourse.

In the Burns case, *supra,* the Indiana Supreme Court held that the word "cohabit," as used in establishing implication of condonation from "cohabitation" meant sexual intercourse.

Likewise, the Nebraska court in the case of *State* v. *Way, supra,* held that the word "cohabit," as used in certain legislation, meant sexual intercourse.

In the Bracksmayer case, *supra,* it was said: "So, in the statute here under consideration, the term 'cohabitation' is, in my opinion, used synonymously with sexual intercourse."

Judge GAVEGAN, in the Herrman case, *supra,* said: "In addition to its literal meaning of 'living together,' the word 'cohabitation' in its popular sense purports sexual intercourse. . . . I am of the opinion that its popular, rather than its derivative, meaning must be applied in determining the legislative intent. . . ."

In determining the meaning to be given to words used by the legislature, recourse often must be had to the context in which the language is used. "To arrive at the meaning of a statutory term, the connection in which it is used and the evident purpose of the legislature must be considered." (Headnote 2) *Rose* v. *W. B. Worthen Co.*, 186 Ark. 205, 53 S. W. 2d 15, 85 A. L. R. 212, "Not only do courts refuse to resort to general rules of construction where the legislative intent clearly appears from the context by the language employed, but they must give effect to all language employed in the context if reasonable and consistent." *Wiseman* v. *Affolter*, 192 Ark. 509, 92 S. W. 2d 388.

To accord to the words "without cohabitation," in the statute under consideration, the import insisted upon by appellant would render these words meaningless, or make them redundant, and we are therefore of the opinion that, when the legislature used this language, the popular, rather than the literal, or derivative, meaning was intended.

Furthermore, we do not believe that a husband who, though not actually living under the same roof with his wife, during a stated period, from time to time resumes marital intercourse with her, can be truly said to be living "separate and apart" from her during this time.

The legislature certainly intended that such separation and living apart for three years as would entitle either of the parties to a divorce should be continuous and uninterrupted. The language "three consecutive years" clearly indicates this legislative intent. While separation for three years, as a ground for divorce, is an entirely different ground from that of desertion, yet, in determining the fact of the separation, pronouncements of courts, as to the necessity of continuity of desertion, in cases where divorce is sought on that ground, shed light on the question here under consideration.

Judge RIDDICK, speaking for the court, in the case of *Reed* v. *Reed*, 62 Ark. 611, 37 S. W. 230, said: "But, if he goes further, and continues to exercise the right of

matrimonial intercourse upon such visits, he will be treated as having condoned the conduct of the wife, and the *continuity of her desertion will be broken.*" (Italics supplied), To the same effect is the decision of the Supreme Court of West Virginia in the case of *Burk* v. *Burk,* 21 W. Va. 445, in which the court said: "The matrimonial cohabitation cannot be broken off by the mere fact of living in separate houses, while the husband constantly or at any time occupies the marriage-bed. If such a thing could for a moment be tolerated, then a man would have a legal warrant for the space of three years to make his wife his mere mistress, an act as shocking to the law as it is to morality and religion."

In his work on Marriage, Divorce and Separation, vol. 1, § 1773, Bishop states the rule as follows: "If, after a wife's desertion, the husband has access to her person as often as he chooses, the continuity (of desertion) is destroyed."

We conclude that the lower court did not err in its construction of the statute involved in this case nor in its finding on the fact situation presented by the evidence. The decree appealed from is accordingly affirmed.