OWEN *v.* OWEN.

4-7502                                         184 S. W. 2d 808

Opinion delivered January 15, 1945.

24

*O. W. Pete Wiggins*, for appellant.

*John R. Thompson*, for appellee.

HOLT, J. Appellee, N. H. Owen, sued appellant, Ella Owen, for divorce, alleging as a cause therefor that they had lived separate and apart for three consecutive years without cohabitation, as provided in the 7th subdivision of § 4381, Pope's Digest, as amended by Act 20 of the Legislature of 1939. May 22, 1944, a decree of divorce was granted appellee and property rights adjudicated. The wife, Ella Owen, has appealed, and since the appeal here, the husband died.

While death terminates a divorce suit, where, as here, property rights are involved, it becomes our duty as an appellate court to review the decree. In *Bradshaw* v. *Sullivan*, 160 Ark. 547, 254 S. W. 1064, this court said: "In 1 C. J., p. 171, § 289 of the chapter on Abatement and Revival, it is said: 'Where the party seeking a divorce appeals from a judgment, simply denying it, and pending the appeal either party dies, the appeal and the action abate absolutely and cannot be revived, there being no one living who can legally have any interest in the same. But it is otherwise in so far as the property rights of the parties are involved. It has also been held that the right of a party against whom a decree of divorce has been rendered to have the same reversed for error is not defeated by the death of the other party pending the appeal.' We do not have for decision the question whether an appeal could be prosecuted where no property rights are involved, for property rights were adjudged here; and there appears to be no division of authority as to the existence of the right of appeal when the decree also adjudicates property rights. 7 Enc. of

Proc., p. 834. In the case of *Strickland* v. *Strickland,* 80 Ark. 451, 97 S. W. 659, the court had decreed in favor of the husband, and the wife appealed, and after the submission of the cause the husband died. The court said: 'Of course, death terminates a divorce suit; but where property rights depend on the correctness of a divorce decree, and an appeal has been taken from it, it is the duty of the appellate court to review the decree in order to settle the property rights.' '' See, also, the rather extensive annotation following the case of *Lemp* v. *Lemp,* 148 A. L. R., p. 1111, subdivision 3-a.

We proceed, therefore, to consider the correctness of the divorce decree.

Appellant contends that the evidence upon which the decree is based lacks corroboration and was not sufficient to support the decree, and we think this contention must be sustained. The rule is well settled in this state that a decree of divorce will not be granted on the uncorroborated testimony of the plaintiff alone, even though the alleged ground be conceded by the defendant, but such testimony must be corroborated by other evidence to establish the truth of the charge. Pope's Digest, § 4385, and see, also, *Goodlett* v. *Goodlett,* 206 Ark. 1048, 178 S. W. 2d 666, and cases there cited.

The purpose of the rule requiring corroboration is, as was said in the Goodlett case, *supra,* ''to prevent procuring divorces through collusion, and that where it is plain there is no collusion, the corroboration may be comparatively slight.'' In the instant case, though no collusion appears, we think, after a careful review of all the testimony, that appellee's evidence lacks corroborative force.

The parties here were married in 1918 and are aged negroes. At that time, appellant was the mother of four children by a previous marriage. Appellee had no children. They agreed to keep their marriage a secret and both attempted to do this.

Appellee testified: ''Q. You didn't have anything when you married her? A. No, sir.'' Appellant, how-

ever, owned a small store, and a number of houses and lots in Conway, as well as other property at the time of the marriage. After their marriage, appellee joined appellant in the operation of the store. He testified that he looked after his wife's business from 1916 to July 7, 1943; that he looked after her business some time before their marriage, and after they were married he collected the rents, fixed her houses, kept them repaired, paid the insurance, carpenter bills and looked after her business affairs generally, except the payment of her taxes. He further testified that his wife traveled a great deal and spent most of her time in Denver, Colo., only returning to Conway once or twice a year to pay her taxes; that he had not lived with her for the past five or six years; that he lived in a room adjoining the store and that she kept a room in a rooming house that she owned in Conway.

Appellee produced witnesses who testified in effect that they did not know that appellee and appellant were married, though some of them suspected that they were. The testimony of these witnesses was to the effect that they did not know whether these parties had lived together or cohabited as man and wife three years prior to filing the suit. Their testimony was negative in character. They testified that appellant maintained a room in her rooming house and that appellee lived at the store and that appellant went by the name of Ella McMahan.

There was no evidence that appellee and appellant were not on good terms and when appellant was in Conway, she was seen at the store with appellee. One of appellee's witnesses testified that he saw appellee carrying coal up to appellant's room and heard him say: "I'm going up to the rooming house and make a fire for her." He did not know whether appellee stayed with appellant at night or not.

Appellant testified that she had never deserted appellee; that they lived together as husband and wife; that they were on good terms; that she trusted appellee with her business affairs and that while her work as a "licensed evangelist" took her into many states where she "set up churches and schools and got them ready for

the pastor," she spent much of her time in Conway, and while there she and her husband cohabited as man and wife; that they slept together the night before the divorce suit was filed. She further testified: "Q. Prior to the week he filed for a divorce had there been any fusses or fights? A. No, sir. Q. Been living together? A. Yes," and that she loved appellee. She further testified that she had not been away from her home in Conway for more than four months at a time. She further testified that she took care of appellee's washing and that appellee had a key to her room and to all her rent houses.

Joe Woodson, appellant's nephew, testified that a week before appellee filed suit for divorce, on Sunday morning he went over to the store, which was open, and found appellant and appellee in bed together in the bedroom that opened off from the store, and that appellant lived with appellee while she was in Conway, a part of the time at the store, and a part of the time she stayed at the rooming house.

Another witness testified that a short time before the divorce suit was filed, he saw defendant come out of appellee's bedroom at the store.

William Johnson testified that he took care of appellant's rooming house in which she had reserved a room, that appellee had a key to her room and would visit appellant there when he desired and carried fire wood to appellant's room. He further testified that they got along well.

Hanna Johnson, William's wife, testified that appellee visited appellant at the rooming house and that "I wouldn't want to see any one get along any better than they seemed to be getting along," and that she did some washing for appellee at appellant's request last year and the year before.

We think it unnecessary to detail more of the evidence. It suffices to say that as indicated above, we think appellee's testimony lacks corroboration sufficient to warrant the decree, and that the preponderance of the testimony shows that these parties cohabited as man and

wife within the three-year period prior to the institution of this action.

In *McClure* v. *McClure*, 205 Ark. 1032, 172 S. W. 2d 243, we held (headnote 4): "A husband who, though not actually living under the same roof with his wife, during a stated period, from time to time, resumes marital intercourse with her cannot be said to be living 'separate and apart' from her during this time. Act No. 20 of 1939"; and in *Serio* v. *Serio*, 201 Ark. 11, 143 S. W. 2d 1097, we held (headnote 2): "The statute (Act No. 20 of 1939) assumes that the period of living apart without cohabitation for three years must have been the conscious act of both parties in order to entitle one of them to a divorce."

For the error indicated, the decree is reversed, and the cause remanded with directions to dismiss appellee's complaint for want of equity.