724

4-9636                                                    244 S. W. 2d 133

Opinion delivered December 17, 1951.

*J. Allen Eades,* for appellant.

WARD, J. On January 18, 1951, appellant, plaintiff below, filed suit for divorce alleging general indignities and adultery, and prayed for custody of their three minor children, Chester, Jerry Ray, and June, whose ages were 17, 14, and 10 respectively. It was also alleged they owned by the entirety a home in Ft. Smith. Appellee filed an answer denying the allegations for divorce and prayed for separate maintenance, possession of the home, custody of the children, attorney's fees, and court costs.

On final hearing the chancellor dismissed the complaint for want of equity, gave the wife possession of the family home and furniture, granted custody of the youngest child, June, to appellee, ordered appellant to pay $20 per week for support of appellee and child, allowed the two boys to choose with whom they would live, and ordered the plaintiff to pay all costs of the action. The decree noted that the oldest boy, Chester, was then living with appellee and the other boy, Jerry Ray, was then living with the appellant. The decree also noted that it failed to provide for payment of monthly installments on the home, but continued that question for further orders

if necessary. The home place which was purchased for $5,250 is subject to a mortgage for some amount between $1,500 and $2,000, and the monthly payments are $32.

To reverse that part of the decree of the lower court which dismissed his petition for a divorce appellant urges this court to find from the evidence that he is entitled to a divorce either on the ground of indignities or on the ground of adultery.

Except for the admission of appellee to immoral relations with another man as will be discussed below, there is practically no testimony to justify a divorce on the ground of indignities. The son, Jerry Ray, who lives with appellant testified to some "fussing" and quarreling, but admitted on cross-examination that his father had promised him a motor bike shortly before the trial. The other son said they had some fights but not real bad ones, and he also said, "Dad has done some things he should not have done". In addition to this appellant said he would not have left her [appellee] had it not been for the "admission" mentioned above.

This leads us to a consideration of the "admission" of appellee as an "indignity" and, for brevity, we will at the same time consider it as a cause for divorce on the ground of adultery. First, however, it is necessary to give the background as developed at the trial.

Appellee has filed no brief and appellant's brief fails to set out much of the testimony and exhibits, making it necessary to rely largely on the transcript. Although it was not insisted at the time of the trial that appellee was insane or *non compos mentis*, yet the undisputed evidence of two or three doctors establishes the fact that appellee was in a bad mental and emotional state shortly before the suit was filed and at the time appellee made the "admission" to her husband and to her neighbor. Although the doctors recommended psychiatric treatment and two or three months hospitalization for appellee it seems that appellant was not convinced of the need. It was at this time and under these conditions that appellee confessed she had had immoral relations with a certain man. At the hearing held on

March 20, 1951, appellee, to the apparent surprise of her own attorney, made the same admission. The chancellor was evidently impressed with appellee's condition because he suggested a plea of insanity would be in order. No such defense was interposed, but the hearing was continued until April 22, 1951. At this hearing a competent doctor testified that she seemed to be mentally sound and, judging from an examination made about three weeks after she made the "admission" he thought the "admission" was a responsible statement. The doctor, however, stated that appellee was "having nervous symptoms due to her menopause, accentuated by her family trouble."

In our opinion, whether we consider appellee's mental condition and her "admission" in connection with "indignities" or "adultery", the evidence is not sufficient to disturb the findings of the chancellor who had the advantage of observation which we do not have. It was shown by competent doctors that Mrs. Dunn was suffering from a nervous disorder and suitable treatment therefor had been recommended. The "other man" testified that the two families had always been friends and that there had never been any improper relationship between appellee and himself. There was testimony by relatives and friends that appellant's conduct was such as might have contributed to appellee's mental and nervous disorder. Under all these facts we agree with the conclusion reached by the chancellor.

Moreover, regardless of appellee's mental condition her "admission" alone was not sufficient. This rule is well stated in *Goodlett* v. *Goodlett,* 206 Ark. 1048, 178 S. W. 2d 666, and in *Owen* v. *Owen,* 208 Ark. 23, 184 S. W. 2d 808, in this language:

". . . The rule is well settled in this state that a decree of divorce will not be granted on the uncorroborated testimony of the plaintiff alone, even though the alleged ground be conceded by the defendant, but such testimony must be corroborated by other evidence to establish the truth of the charge."

The only corroborating testimony in this connection here was that appellee had been in the car with the man in question on a few occasions but in no instance does it appear that there were any suspicious circumstances. In fact it appears from appellant's own testimony that these instances would not have been taken seriously by him had it not been for the later "admission".

When all the testimony relative to indignities and adultery is considered in connection with appellee's undisputed nervous condition which so impressed the chancellor we are unwilling to say he committed any error.

Affirmed.

HOLT, J., not participating.

GEORGE ROSE SMITH, J., dissents.