CLEMENTINA ROSARIO, Plaintiff and Appellee, *v.* ANGEL GALARZA VEGAS, Defendant and Appellant.

No. 12380.    Resubmitted June 21, 1961.—Decided June 29, 1961.

*Raúl Matos* for appellant.    *Carlos J. Irizarry Yunqué, H. Lugo Bougal,* and *E. Goblas Carvajal* for appellee.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The question raised in the present appeal is whether the real separation of both spouses for more than three years, as cause for divorce, was interrupted by a single sexual act or union performed by the spouses with each other. A similar

situation, although not identical, remained unsolved in *Cabrer* v. *Pietri*, 67 P.R.R. 409 (1947).[1]

Plaintiff Clementina Rosario and defendant Angel Galarza Vegas were married in Ponce, Puerto Rico, on June 6, 1937. Two children were born of the marriage, both already of legal age. Since the end of the year 1953 the spouses separated voluntarily, said separation being complete ever since, as they lived in separate residences and having no relations of any kind whatsoever, except what is hereinafter mentioned. On one day in November 1956, plaintiff and defendant met in a house where she was taking care of some children. Already at that time the separation between both spouses had been complete for more than two years. On that occasion when they met, plaintiff yielded to the requests and insistence of defendant and they had sexual intercourse for some minutes on only one occasion. Immediately afterwards they separated again and continued to be separated.

On May 21, 1957 plaintiff filed an action for divorce against defendant on the ground of separation. The Civil Code provides as a ground for divorce, among others: "Separation of both spouses for an uninterrupted period of more than three (3) years; provided, that when the separation for the said period of more than three (3) years is satisfactorily proved, the woman, when the judgment is rendered, shall always be considered as the innocent spouse, with all the rights inherent in such condition following divorce." (Section 96 of said Code, 31 L.P.R.A. § 321.)

After the case was heard on the merits the Superior Court, Ponce Part, rendered judgment granting the complaint. To review the same defendant has appealed before us and as a ground for his appeal he assigned as a sole error that the trial court erred in granting judgment on the ground of separation

---

[1] There we stated at p. 411: "We are not called on to inquire in this case whether the maintenance of a different residence by the husband would be sufficient to constitute separation under our statute if the parties nevertheless continued their sexual relations."

for more than three years because said separation was interrupted by the above-mentioned act of cohabitation of the spouses. As to the above-mentioned acts there is no controversy whatsoever.

Defendant argues that the act of cohabitation performed by the spouses altered "the fundamental relations" between them and in support of his contention he cites several cases which we shall examine further on. Since it is important to examine whether as a question of fact this act of cohabitation altered the fundamental relations between the spouses and the situation of separation existing between them, and whether they actually had such an intention, let us turn to the pertinent part of the transcript of the record so as to determine the meaning, if any, that may be attributed to the same:

*"Rebuttal Evidence*

Testimony of Clementina Rosario

MR. IRIZARRY: Is your name Clementina Rosario?
WITNESS: Yes, sir.
Did you hear the testimony of your husband, Mr. Galarza? Yes.
Did you hear him say that he had sexual relations with you a year ago? That he performed marital intercourse with you? Is there any truth in this?
Well, Your Honor, as he stayed there one night helping me take care of the children because my son was in Sabana Grande, and he insisted so much, it was not my wish, but as he insisted— that was in November, but I did not live with him.
In November of what year?
Nineteen hundred and fifty-six.
Did you have any relations with him?
Yes, but it was not that I lived with him.
Only one night?
Something like that.
Then, on that occasion, did you live with him?
A couple of minutes.
Did you have sexual intercourse?
For a few minutes, it was not that I lived with him.

And why did you say a while ago that you had not had relations of any kind since 1952?

Yes, sir, I have not lived with him under the same roof. When I went to the United States he had left the house.

On that single occasion since 1952 when you have been together, was that one time in November for a few minutes?

Yes, it was a casual thing.

That is all."

In his brief defendant-appellant relies mainly on the cases of *Collins* v. *Collins*, 194 La. 446, 193 So. 702 (1940); *Shirey* v. *Shirey*, 87 Ark. 175, 112 S.W. 369 (1908); *Owen* v. *Owen*, 208 Ark. 23, 184 S.W.2d 808 (1945), and *Varnell* v. *Varnell*, 207 Ark. 711, 182 S.W.2d 466 (1944).

He correctly points out that there is no case in our case law like the present one. Let us examine in the first place the cases cited by defendant, which do not convince us. The case of *Collins* v. *Collins*, *supra*, is very different from the case at bar. It was not a divorce action for separation, but rather a suit for separation from bed and board on the ground of cruel treatment. The cohabitation occurred after the action was filed and three days before the trial. The wife in her car and the husband in his car went to a place previously designated, where they had what the trial court labelled as "an affaire d'amour." Under such circumstances the court decided that such an act was a condonation of all offenses received by plaintiff. It was not decided therein whether or not that single act interrupted the separation because this was not in issue in said case.

In the above-mentioned cases of *Owen* v. *Owen* and *Varnell* v. *Varnell*, *supra* although the parties lived apart, they nevertheless performed a series of acts of cohabitation which clearly destroyed the alleged situation of separation between them, and it was thus decided by the court. In *Shirey* v. *Shirey*, *supra*, it was held that a single voluntary act of intercourse by the innocent spouse operates to condone the cruel acts committed by the other spouse. In this case the ground

of cruel treatment and not of separation was raised. In any event, although the ground invoked would have been that of separation, this case would not be applicable to ours because the case was decided under the Arkansas statute which expressly establishes cohabitation as an obstacle for divorce by separation. *McClure* v. *McClure*, 205 Ark. 1032, 172 S.W.2d 243 (1943). The same may be said of the above-mentioned cases of Owen and Varnell, which were also decided under the Arkansas statute, which is different from ours, as we have already seen. 34 Arkansas Statutes, § 1202.

Defendant also points out that the term "interruption" is defined as "any act which prevents the continuance of any course of progress." The course in progress is described as "the total separation of husband and wife existing between them" in this case. Without considering the merits of the definition, it is necessary to acknowledge that the realities of the affective life of human beings cannot be understood nor solved by appealing to the dictionary.[2] What we really must determine in this case is what was the private and social meaning of the act of cohabitation performed by the spouses and determine whether or not in the light of said meaning and of the law, it interrupted the separation of the spouses contemplated by our statute.

The ninth ground for divorce in Puerto Rico consists in "the separation of both spouses for an uninterrupted period of more than three years." Said ground was originally created by Act No. 46 of May 9, 1933, as amended by Act No. 62 of April 29, 1942. Although said ground was possibly inspired by the laws of Louisiana,[3] the Puerto Rican lawmaker

---

[2] "... But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell* v. *Markham*, 148 F.2d 737 (Learned Hand, 1945) cited in W. Friedman, Legal Theory 316 (3d ed., 1953.)

[3] Raúl Matos, "*La Novena Causal de Divorcio*," 12 Revista Jurídica. U.P.R. 135.

used his own language, which is different from that of the Louisiana statutes and from that of other statutes of state jurisdictions which accept separation as a ground for divorce. As we have not found applicable precedents in our jurisdiction, we have explored the jurisdiction of the United States. In truth, the decisions and authorities on the matter are extremely abundant. Annotations may be seen in 155 A.L.R. 132, 166 A.L.R. 498, and 32 A.L.R.2d 107. Also, the cases cited in 17 Am. Jur., *Divorce and Separation*, § 240, and in 27 C.J.S., *Divorce*, §§ 37 and 61.[4]

There is a definite conflict between the diverse state jurisdictions as to the effect of isolated acts of cohabitation during the period of separation of the spouses.

The majority of cases wherein it has been decided that cohabitation interrupted the separation involved situations in which the spouses had frequent or several relations, except in the cases decided under express provisions of law, which make cohabitation an impediment for divorce. *Reilly* v. *Reilly*, 57 R.I. 432, 190 Atl. 476 (1937) ; *McClure* v. *McClure, supra*, *Satterwhite* v. *Satterwhite*, 144 La. 308, 80 So. 547 (1919) ; *Reed* v. *Reed*, 62 Ark. 611, 37 S.W. 230 (1896).

As to the cases in which only one isolated or single act occurred which did not entail the intention of the spouses to live together again, the majority of jurisdictions hold that said isolated act is not enough by itself to interrupt the separation or that it will operate to condone grievances. *Campbell* v. *Campbell*, 19 So.2d 354 (Ala. 1944), 155 A.L.R. 130; *Danforth* v. *Danforth*, 88 Me. 120, 33 Atl. 781 (1895) ; *Kennedy* v. *Kennedy*, 87 Ill. 250 (1877) ; *Womble* v. *Womble*, 152 S.W. 473 (1912) ; 32 A.L.R.2d 142.

---

[4] Probably a similar situation was what made Judge Cardozo exclaim "the fecundity of our case law would make Malthus stand aghast." *The Growth of the Law*, published in Selected Writings of Benjamin N. Cardozo, 187, edited by Margaret E. Hall, New York (1947).

It has been held that a mere sexual act without any intention of living together as husband and wife does not by itself restore marital relations. *Campbell* v. *Campbell, supra*. Also, it has often been held that it is the duty of the husband to visit his absent wife and to endeavor to effect a reconciliation. *Danforth* v. *Danforth, supra*, cited with approval in the *Campbell* case.

After having examined the case law on the matter, which contains conflicting views, we must find our own solution. *Godreau* v. *Guerrero*, 68 P.R.R. 82, 83. We are as convinced as was the court which entertained the case of *Campbell* v. *Campbell, supra*, that when plaintiff herein yielded to her husband's requests, she did not have the intention of restoring her marital relations with him. We find that the statement of plaintiff to that effect is eloquent because of its sincerity. Examine the fragment of the transcript of record transcribed above. We agree with the trial court in that, within the facts of the case at bar, the single sexual act which the spouses performed in November 1956, did not alter the fundamental relations between them and that the existing separation between them continued.[5] We decide that said isolated act did not interrupt the term of separation provided by law.

We cannot compel plaintiff to continue a fictitious marriage. The general interest would gain nothing from this and, on the contrary, in doing justice as we understand it, said public interest does not lose anything. The situation would vary if instead of an isolated and inconsequential act of cohabitation it were a question of a series of intermittent

---

[5] We believe that this interpretation is in harmony with that made by this Court in *Díaz* v. *Torres*, 17 P.R.R. 476, 486 (1911), upon interpreting the scope of the reconciliation or condonation in relation to an action for divorce. It was stated therein, repeating what has been decided by the same court in *Bravo* v. *Franco*, judgment of April 2, 1902, that the mere condonation of the wrong is not sufficient, but it is necessary that the union of the parties be continued and the conjugal rights be re-established in such a manner as to reinstate the offending spouse in the position he or she occupied before the commission of the offense.

or frequent acts. In this case, the general interest would warrant a different decision. But this is not the case before us.

We are dealing with an outstanding personal matter wherein a human being is entitled to the less possible intervention of the state and into which we may only meddle when the general interest evidently justifies such an action.

The judgment of the Superior Court is affirmed.