CLEMENTINA ROSARIO, demandante y apelada, *v.* ÁNGEL GALARZA VEGAS, demandado y apelante.

Número 12380.
*Reasignado*: 21 de junio de 1961. *Resuelto*: 29 de junio de 1961.

*Raúl Matos*, abogado del apelante; *Carlos J. Irizarry Yunqué, H. Lugo Bougal y E. Goglas Carvajal,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

La cuestión planteada por el presente recurso es si la separación real de ambos cónyuges por más de tres años,

como causa de divorcio, quedó interrumpida por un solo acto o unión sexual llevado a cabo por los esposos entre sí. Una situación parecida, aunque no igual, quedó sin resolver en *Cabrer* v. *Pietri*, 67 D.P.R. 437 (1947).[1]

La demandante Clementina Rosario y el demandado Angel Galarza Vegas contrajeron matrimonio en Ponce, P. R., el 6 de junio de 1937. En su matrimonio tuvieron dos hijos, ambos ya mayores de edad. Desde fines del año 1953 los esposos se separaron voluntariamente, siendo dicha separación desde entonces completa, viviendo en residencias separadas, y sin sostener relaciones de clase alguna, excepto lo que a continuación se expresa. Durante uno de los días de noviembre de 1956 la demandante y el demandado se encontraron en una casa en donde ella estaba cuidando unos niños. Ya para esa fecha la separación entre ambos cónyuges era total desde hacía más de dos años. En esa ocasión en que se encontraron, la demandante accedió a los requerimientos e insistencias del demandado y sostuvieron relaciones sexuales durante algunos minutos en una sola ocasión. Inmediatamente después volvieron a separarse y separados continuaron.

En 21 de mayo de 1957 la demandante radicó demanda de divorcio contra el demandado por la causal de separación. Dispone el Código Civil que es causa de divorcio, entre otras, "La separación de ambos cónyuges por un período de tiempo sin interrupción de más de tres años; disponiéndose, que probado satisfactoriamente la separación por el expresado tiempo de más de tres años, al dictarse sentencia siempre se considerará como cónyuge inocente a la mujer con todos los derechos inherentes a tal condición como consecuencia del divorcio." (Art. 96 de dicho Código, 31 L.P.R.A. 321).

Luego de visto el caso en su fondo el Tribunal Superior,

---

[1] Allí dijimos, en la pág. 439: "No tenemos que decidir en este caso si el hecho de que un esposo tenga una residencia distinta sería suficiente para constituir la separación de acuerdo con nuestro estatuto, si no obstante ello las partes han continuado sus relaciones sexuales."

Sala de Ponce, dictó sentencia declarando con lugar la demanda. Para revisar la misma ha recurrido ante nos el demandado y como fundamento de su recurso señaló como único error que el tribunal a quo erró al declarar con lugar la sentencia por la causal de separación por más de tres años porque dicha separación fue interrumpida por el mencionado acto de cohabitación de los cónyuges. Sobre los hechos según relatados no hay controversia alguna.

Argumenta el demandado que el acto de cohabitación realizado por los cónyuges alteró "las relaciones fundamentales" entre ellos y cita varios casos, los cuales veremos más adelante, en apoyo de su recurso. Como es importante ver si como cuestión de realidad dicho acto de cohabitación alteró las relaciones fundamentales entre los cónyuges y la situación de separación que existía entre ellos y ver si en efecto ellos tuvieron la intención de que así fuese, veamos la parte pertinente del récord taquigráfico para apreciar qué significado, si alguno, se le puede atribuir al mismo:

*Prueba de "Rebuttal"*
Declaración de Doña Clementina Rosario.

LCDO. IRIZARRY: ¿Su nombre, es Clementina Rosario?
TESTIGO: Sí, señor.
—¿Usted oyó declarar a su esposo el señor Galarza?
—Sí.
—¿Lo oyó decir que hace un año él tuvo relaciones con usted? ¿Que hizo relaciones maritales de marido y mujer con usted? ¿Qué hay de cierto en eso?
—Bueno, honorable Juez, como él se quedó una noche allá ayudándome a cuidar los nenes porque mi hijo estaba en Sabana Grande y él tanto estuvo insistiendo, no era mi deseo, pero como él me insistió—eso fue en noviembre, pero no fue cosa de que yo viviera con él.
—¿En noviembre de qué año?
—Del cincuentiséis.
—¿Tuvo usted relaciones con él?
—Sí, pero no era cosa de que viviera con él.
—¿Una noche nada más?

—Una cosa así.

—¿Entonces, en esa ocasión usted vivió con él?

—Por par de minutos.

—¿Tuvieron relaciones sexuales?

—Par de minutos, no fue cosa que viviera con él.

—¿Y por qué había dicho ahorita que ustedes desde el cincuentidós no tenían relaciones de ninguna clase?

—Sí, señor, bajo techo nunca he vivido más con él. Cuando yo fui a Estados Unidos él se había ido de la casa.

—¿En la única ocasión del cincuentidós para acá en que ustedes han vivido fue esa de noviembre por unos minutos?

—Sí, así, una cosa pasajera.

—Nada más.

En su alegato, descansa el demandado-apelante mayormente en los casos de *Collins* v. *Collins*, 194 La. 446, 193 So. 702 (1940), *Shirey* v. *Shirey*, 87 Ark. 175, 112 S.W. 369 (1908), *Owen* v. *Owen*, 208 Ark. 23, 184. S.W.2d 808 (1945) y *Varnell* v.*Varnell*, 207 Ark. 711, 182 S.W.2d 466 (1944).

Señala con razón que en nuestra jurisprudencia no hay un caso como el presente. Veamos primero los casos citados por el demandado, los cuales no nos convencen. El caso de *Collins* v. *Collins*, supra, es muy distinto al que nos ocupa. No se trataba de una acción de divorcio por separación sino de una demanda para obtener separación de cama y mesa por la causal de trato cruel. La cohabitación ocurrió después de haberse radicado la demanda y tres días antes del juicio. Los cónyuges fueron en sus respectivos automóviles cada uno a un lugar previamente acordado donde tuvieron lo que el tribunal llamó un "affaire d'amour". Bajo aquellas circunstancias el tribunal resolvió que dicho acto constituyó una condonación de las ofensas recibidas por la demandante. No se resolvió allí si aquel acto sexual interrumpió o no la separación porque eso no estaba planteado en dicho caso.

En los citados casos de *Owen* v. *Owen* y *Varnell* v. *Varnell*, aunque los esposos vivían en distintas residencias, sin embargo realizaron una serie de actos de cohabitación que cla-

ramente destruyeron la alegada situación de separación entre ellos y así lo resolvió el tribunal. En *Shirey* v. *Shirey*, supra, se sostuvo que un solo acto de cohabitación constituyó la condonación por la parte inocente de los actos de crueldad cometidos por el otro cónyuge. En este caso también se planteaba la causal de trato cruel y no la de separación. De todos modos, aunque la causal invocada hubiese sido la de separación, este caso no sería aplicable al nuestro porque el mismo se resolvió bajo el estatuto de Arkansas que expresamente consigna la cohabitación como obstáculo al divorcio por separación. *McClure* v. *McClure*, 205 Ark. 1032, 172 S.W.2d 243 (1943). Lo mismo puede decirse de los citados casos de *Owen* y *Varnell* que también se resolvieron bajo el estatuto de Arkansas que es distinto al nuestro, como ya hemos visto. *34 Arkansas Statutes, Sec. 1202.*

También nos señala el demandado que el concepto "interrupción" se define como "el impedimento para la continuación de un asunto en curso". El asunto en curso se describe como la "desvinculación total de marido y mujer existente entre ambos" en este caso. Sin entrar en los méritos de la definición, es preciso reconocer que las realidades de la vida afectiva de los seres humanos no se puede entender ni resolver apelando al diccionario.[2] Lo que es realmente necesario determinar en este caso es cuál fue la significación privada y social del acto de cohabitación realizado por los cónyuges y determinar si a la luz de dicha significación y del derecho, el mismo interrumpió o no la separación de los cónyuges que contempla nuestro estatuto.

La novena causal del divorcio en Puerto Rico consiste en "la separación de ambos cónyuges por un período de tiempo sin interrupción de más de tres años". Dicha causal fue

---

[2] "... But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell* v. *Markham*, 148 F.2d 737 (1945) (Learned Hand) citado en W. Friedman, *Legal Theory*, 3rd. ed., 1953, pág. 316.

creada originalmente por la Ley Núm. 46 de 9 de mayo de 1933, según enmendada por la Ley Núm. 62 de 29 de abril de 1942.  Aunque posiblemente dicha causal fue inspirada por la ley de Luisiana([3]) el legislador puertorriqueño utilizó su propia redacción que resulta distinta a la del estatuto de Luisiana y a la de otros estatutos de jurisdicciones estatales. que admiten la separación como causa de divorcio.  Como en nuestra jurisdicción no hemos encontrado precedentes aplicables hemos explorado las jurisdicciones de los estados norteamericanos.  En verdad que la jurisprudencia sobre la materia es sumamente abundante.  Pueden verse las anotaciones en 155 A.L.R. 132, 166 A.L.R. 498 y 32 A.L.R. 2nd 107.  También pueden verse los casos citados en 17 Am. Jur., *Divorce and Separation*, sec. 240 y en 27 C.J.S. *Divorce*, secs. 37 y 61.([4])

Existe decidido conflicto entre las diversas jurisdicciones estatales en cuanto al efecto de actos aislados de cohabitación durante el período de la separación de los cónyuges.

La mayoría de los casos en que se ha resuelto que la cohabitación interrumpió la separación, ha comprendido situaciones en que los esposos sostuvieron frecuentes o varias relaciones, excepto en los casos resueltos bajo disposiciones expresas de ley que hacen de la cohabitación un impedimento para el divorcio.  *Reilly* v. *Reilly*, 57 R.I. 432, 190 Atl. 476 (1937); *McClure* v. *McClure*, supra; *Satterwhite* v. *Satterwhite*, 144 La. 308, 80 So. 547 (1919); *Reed* v. *Reed*, 62. Ark. 611, 37 S.W. 230 (1896).

En cuanto a los casos en que sólo ocurrió un acto aislado o único sin que conllevaran la intención de los esposos de volver a vivir juntos, la mayoría de las jurisdicciones sos-

---

([3]) Raúl Matos, "La Novena Causal de Divorcio", 12 Revista Jurídica. U.P.R. 135.

([4]) Probablemente una situación así sería la que hizo exclamar al Juez Cardozo "La fecundidad de nuestro derecho casuístico horrorizaría a Malthus". *The Growth of the Law*, publicado en *Selected Writings of Benjamin N. Cardozo*, edited by Margaret E. Hall, New York, 1947, p. 187.

tienen que dicho acto aislado no basta para que se interrumpa la separación o para que constituya condonación de agravios. *Campbell* v. *Campbell*,—Ala.—, 19 So.2d 354 (1944), 155 A.L.R. 130; *Danforth* v. *Danforth*, 88 Me. 120, 33 Atl. 781 (1895); *Kennedy* v. *Kennedy* 87 Ill. 250 (1877); *Womble* v. *Womble*, 152 S.W. 473 (1912); 32 A.L.R. 2d 142.

Se ha sostenido que el mero acto sexual sin la intención de los cónyuges de volver a vivir como marido y mujer no restablece la relación marital. *Campbell* v. *Campbell*, supra. Además se ha sostenido frecuentemente que es el deber del esposo visitar a su esposa ausente y tratar de producir la reconciliación. *Danforth* v. *Danforth*, supra, citado con aprobación en el caso de Campbell.

Luego de examinar la jurisprudencia sobre el particular, que contiene posiciones conflictivas debemos encontrar nuestra propia solución. *Godreau* v. *Guerrero*, 68 D.P.R. 88, 89. Estamos convencidos, igualmente que el tribunal que entendió en el caso de *Campbell* v. *Campbell*, supra, de que en el momento en que la aquí demandante cedió a las insistencias de su esposo ella no tenía la intención de restablecer la vida conyugal con él. Encontramos elocuente por su sinceridad la declaración al respecto de la demandante. Véase el fragmento del récord taquigráfico arriba transcrito. Concurrimos con la sala sentenciadora en que, dentro de los hechos del presente caso, la unión sexual que en una sola ocasión sostuvieron entre sí los cónyuges en noviembre de 1956 no alteró las relaciones fundamentales entre ellos y que continuó la separación existente entre los mismos. (5) Resolvemos que

---

(5) Entendemos que esta interpretación es consonante con la que hizo este Tribunal en *Díaz* v. *Torres*, 17 D.P.R. 501, 511 (1911) al interpretar el alcance de la reconciliación o perdón en relación con una acción de divorcio. Se dijo allí, reproduciendo lo ya resuelto por el mismo Tribunal en *Bravo* v. *Franco*, sentencia de 2 de abril de 1902, que el mero perdón del agravio no es suficiente sino que se precisa que continúe la unión de las partes y se restablezcan todos los derechos conyugales, de modo que el cónyuge ofensor vuelva a ocupar la misma posición que ocupaba antes de que se cometiera la ofensa.

dicho acto aislado no interrumpió el término de separación que dispone la ley.

No podemos condenar a la demandante a continuar un matrimonio ficticio. Nada ganaría con eso el interés general y por el contrario al hacer justicia como la entendemos nada pierde dicho interés público. Distinta sería la situación si en vez de un acto de cohabitación aislado y sin consecuencia se tratase de una serie de actos intermitentes o frecuentes. En ese caso el interés general justificaría una decisión distinta. Pero ese no es el caso ante nosotros.

Estamos mediando en un área eminentemente personal en que el ser humano tiene derecho a la menor intervención posible de parte del Estado y en la cual sólo debemos irrumpir cuando el interés general así lo justifique con claridad.

*Se confirmará la sentencia del Tribunal Superior.*