**Osborn v. Osborn**

*Richard L. Campbell*, for plaintiff.
*H. Denning Mason*, for defendant.

GRINE, *J.*, March 17, 1983—The sole issue to be decided is whether or not a spouse is entitled to a divorce under Section 201(d) of the Divorce Code, 23 P.S. §201(d), upon alleging the parties have lived separate and apart for at least three years and the marriage is irretrievably broken, where the parties have been together for infrequent visits and trips, and engaged in sporadic instances of sexual relations. We hold such a relationship is not necessarily a bar to obtaining a divorce under the Divorce Code.

Ian C. Osborn and Kristin W. Osborn were married on July 23, 1977. Some 21 months later, in late April 1979, Ian C. Osborn left the parties' marital residence. There are no children born of this marriage. Since separation, the Osborn's have not been together socially as husband and wife with the exception of a trip in which they pretended they were married for the sake of Mrs. Osborn's sick father. The first Christmas after separation, Dr. Osborn accompanied his wife on a trip to Iowa to visit her ill father. Shortly after separation Ian Osborn returned his only key to the marital home to his wife. He has never returned except upon permission and upon the initiative of his wife. Osborn has maintained his own residence separate from his wife

since separation. He has never returned to the marital home without his wife's knowledge. To those who have inquired of their marital status, Osborn told them he and his wife were separated. Osborn testified he has eaten dinner with his wife about half a dozen times at the marital home. He also testified to eating supper there once a week for the first six months after separation. Osborn testified he spent four nights with his wife during 1981 and one night in 1982. Dr. Osborn testified his separation in April of 1979 was to be permanent.

Kristin Osborn testified she and her husband had dinner together approximately once per week during the first six months of their separation. She also verified her husband's motives for accompanying her on the 1979 Christmas visit to Iowa. Mrs. Osborn also corroborated the occasioned visits of her husband.

The parties agree upon the underlying facts of their relationship after separation. However, regarding their perceptions of the marriage, they disagree sharply. Mrs. Osborn testified as to her hope the marriage is viable and that she beleived her husband had expressed interest in working out the parties marital differences as late as May of 1982. Mrs. Osborn further testified she hoped Dr. Osborn would adopt her opinion their marriage was workable. To the date of the master's hearing Osborn steadfastly declined to do so.

Ian Osborn testified he has never altered from the original opinion which he held at the time of separation that the marriage was unworkable and he never intended anything but a permanent separation.

Defendant's exceptions to the findings of fact and conclusions of law by the master in this divorce action center around plaintiff's right to a Section

201(d) divorce. The issue raised is whether or not on this record plaintiff is entitled to a divorce. Under Section 201(d) of the Divorce Code, Act of April 2, 1980, P.L. 63, No. 26; 23 P.S. §201(d):

It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken, and:

(i) the respondent does not deny the allegations set forth in the affidavit; or

(ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least three years and that the marriage is irretrievably broken.

Defendant denies the allegations their marriage is irretrievably broken. "Irretrievable breakdown" of a marriage is "[e]strangement due to marital difficulties with no reasonable prospect of reconciliation." Divorce Code §104; 23 P.S. §104. "Separate and apart" is the "[c]omplete cessation of any and all cohabitation." Id. Cohabitation is not defined in the Divorce Code. Defendant would equate the sporadic sexual encounters between the parties, the visits together, and the trip taken by them to Iowa, as a situation where the parties have not lived "separate and apart" under the Divorce Code.

Such a determination must interpret the term "cohabitation" as used in Section 201(d) of the Divorce Code. We believe cohabitation means more than two spouses seeing each other on an occasional basis after separation and taking a week long trip to Iowa, even if they sporadically engage in sexual relations. We believe the legislature in-

tended cohabitation to mean a more substantial sort of relationship—a renewed marital relationship. According to Webster's New Collegiate Dictionary, Second Edition (1959), cohabitation is defined as "[t]o dwell or live together as husband and wife." Such a relationship involves significantly more than coition. Under the Statutory Construction Act of 1972, Act of December 6, 1972, P.L. 1339, §3; 1 Pa.C.S.A. §1502, et seq., words and phrases are to be construed according to rules of grammar and according to their common and approved usage: Id., 1 Pa.C.S.A. §1903. The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly: Id., 1 Pa.C.S.A. §1921(a), 1921(c).

Section 102 of the Divorce Code, 23 P.S. §102, notes the family is the basic unit in society, and its protection and preservation is of paramount public concern. The General Assembly also recognized the law for dissolution of marriage should be effective for dealing with "the realities of matrimonial experience." Reconciliation and settlement of differences between spouses should be encouraged and effected. Primary consideration should be given to the welfare of the family: Id., §102(b); 23 P.S. §102(b).

We believe the most compelling reason to equate "cohabitation" with living together as husband and wife is to promote reconciliation. To hold otherwise would discourage any attempt by a spouse to attempt reconciliation if such efforts were interpreted by the courts to toll the three year period or begin it running anew. Being fearful of prolonging an already tenuous relationship, estranged spouses would seek to avoid contact with their respective partner.

In the case at bar the Osborn's have lived "separate and apart" for they have never renewed their marital relationship. Their encounters together since separation do not rise to the level of cohabitation as that term is used in the Divorce Code.

We recognize our construction of the term cohabitation as it fits within the overall scheme of the Divorce Code is at odds with the meaning attached to it by certain courts of other jurisdictions. However, we believe our interpretation will foster preservation of family unity by promoting reconciliation between spouses after separation. See: Dottellis v. Dottellis, 187 A. 2d 128 (Mun. Ct. of Appeals District of Columbia 1962) (cohabitation means sexual intercourse; husband and wife, though living under separate roofs, regularly engaged in sexual relations monthly over a period in excess of six years; Owen v. Owen, 208 Ark. 23, 184 S.W. 2d 808, 810 (1945) (parties cohabitated as man and wife within three years prior to filing for divorce; husband resuming marital intercourse with spouse cannot be said to be living "separate and apart," citing McClure v. McClure, 205 Ark. 1032, 172 S.W. 2d 243 (1943). Whatever the precedential value of these cases may be, they do not represent an enlightened view upon the subject.

We also recognize our decision goes a step beyond the paucity of Pennsylvania cases on the subject. See: Amelio v. Amelio, 18 D. & C. 3d 673 (1981) (facts as pled on demurrer, husband may proceed with proof on entitlement to divorce where he averred parties lived "separate and apart" for a period of three years in same dwelling with spouse); Meyerl v. Meyerl, 7 FLR 2606 (Allegheny Co. July 6, 1981) (husband returned to marital home after long separation and lived in basement, no marital rela-

tions took place, divorce granted); O'Brien v. O'Brien, 7 Butler Leg. J. 17, Vol. VI, No. 9, Pennsylvania Law Journal Reporter, February 28, 1983, page 8 (no. 1978-776, 1983) (occasional sexual relations, coupled with a desire for reconciliation by one party, will not preclude a finding of irretrievable breakdown).

When a husband admitted staying at his wife's house one night during the two years prior to suit (sleeping in the childrens' room while the wife was in the house) this did not prevent the parties divorce for living "separate and apart continuously for a period of two years or more . . . " as required by the applicable Louisiana statute. Boyd v. Boyd, 348 S. 2d 121, 122 (La. App. 1977) (living apart must be visible to the community and therefore is not present when spouses merely live in separate bedrooms in the same house). In order to establish a reconciliation which will break the continuity of a period of separation under Louisiana statute, the overall circumstances must show a *mutual* intention by the parties to *voluntarily* resume their marital relationship: Millon v. Millon, 352 S. 2d 325, 327 (1977) (Isolated acts of intercourse is not necessarily conclusive of the issue of reconciliation). If intercourse absolutely constitutes reconciliation, then a spouse with grounds for separation or divorce would be reluctant to respond to attempts at reconciliation for fear of losing accrued grounds. Indeed, such a rule would encourage a spouse to avoid situations conducive to reconciliation: Id., 352 So. 2d at 327 (footnote 1).

In a factual situation akin to the case at bar, Lapidus v. Lapidus, 70 A.D. 2d 330, 420 N.Y.S. 2d 896 (1979), the New York Supreme Court, Appellate Division, held sporadic cohabitation and sexual intercourse between the parties during the time

of separation, including a joint five day trip to the West Indies did not preclude a divorce.

However, DRL § 170(6) [Domestic Relations Law § 170(6) is a "no fault" divorce provision] authorizes a divorce pursuant to a filed separation agreement where the parties "have lived separate and apart pursuant" to such an agreement "for a period of one or more years" after the execution of the agreement and the plaintiff proves that "he or she has substantially performed all the terms and conditions of such agreement." The statute does not refer to "cohabitation." Cohabitation has been variously defined as "living together as husband and wife" and as "engaging in sexual intercourse." There is no statutory basis for the trial court's finding that the conceded sexual intercourse between the parties constituted "cohabitation" precluding a conversion divorce. We have held: "Mere cohabitation alone does not by itself destroy the validity of the separation agreement but must have as an added ingredient an intent to reconcile . . . " (Markowitz v. Markowitz, 52 A.D. 2d 521, 381 N.Y.S. 2d 678). This court earlier stated that "mere cohabitation and sexual intercourse between the parties, following upon the execution of the separation agreement, would not vitiate such agreement. There must be proof of an intention to abandon the separation agreement." (Farkas v. Farkas, 26 A.D. 2d 919, 274 N.Y.S. 2d 842). What is required is "such a resumption of the marital relation as to indicate an intention to abandon the agreement of separation." (Brody v. Brody, 190 App. Div. 806, 807, 180 N.Y.S. 364).: Lapidus v. Lapidus, 420 N.Y.S. 2d at 897.

In Lapidus the trial court was reversed in its finding the parties had "cohabitated" during the period of separation and thus neither was entitled

to a divorce. Cohabitation alone does not by itself destroy the validity of a separation agreement: Stim. v. Stim, 65 A.D. 2d 790, 410 N.Y.S. 2d 319 (1978) Cf: Annotation 35 A.L.R. 3d 1238, Separation Within Statute Making Separation A Substantive Ground for Divorce, 35 A.L.R. 3d 1238 §12 (spouses living together but continue association).

We believe the sounder rule, consistent with the objectives of the Pennsylvania Legislature expressed in Section 102 of the Divorce Code that reconciliation be promoted and the law regarding dissolution of marriage be reflective of the realities of matrimonial experience, is "cohabitation" must be examined in light of the overall circumstances of the parties. We hold as a matter of law "cohabitation" means a mutual intention to resume the marital relationship as husband and wife. Isolated instances of sexual intercourse, sporadic visits together, and trips together does not establish cohabitation prohibiting a divorce under Section 201(d) of the Divorce Code requiring the parties live separate and apart for three years prior to divorce.

Herein, Dr. Osborn did not commence a renewed marital relationship after the date of separation. He did not indicate he intended to resume the status as a husband. Other than meeting and travelling with his wife he never renewed his obligation as her husband.

We have not ordered counselling under Section 201(d)(2) of the Divorce Code, 23 P.S. §201(d)(2) as we are convinced it would be futile. Dr. Osborn testified the marriage was unworkable. We conclude this marriage is irretrievably broken.

Accordingly, this day, we have granted plaintiff, Ian C. Osborn, a divorce under Section 201(d) of the divorce code.

## ORDER

And now, March 17, 1983, the exceptions to findings of fact and conclusions of law by master in divorce, filed by defendant, Kristin W. Osborn, are dismissed.