McCALEB, Justice.
This is a suit by a wife against her husband for a separation from bed and board. The parties, who are Negroes, were married in 1920. It is averred that, throughout the years, the husband has been guilty of such cruelty and other excesses as to render continuation of the marital relation insupportable.
The husband denies generally the charges of the wife, alleging that she is a nagging type of woman. He also pleads that, whereas he and his wife have had many disputes and several estrangements, alL have ended in reconciliations.
After a trial below on these issues, there was judgment for the wife, together with an award of alimony and $750 attorneys’ fees. The husband has appealed, and the wife has answered, praying that the attorneys’ fees be increased to $1000.
The record teems with evidence supporting the wife’s charges of cruelty, extending for a period of over thirty years of married life. Specifically, it is shown that the unseemly conduct of the husband began only five days after the marriage, when he slapped his wife in the face, thereby provoking an estrangement which lasted until 1923. In 1924, he beat his wife so' badly that she had to be treated at Charity Hospital, and, as a consequence of this incident, he was convicted of a criminal assault. In January of 1931, he struck his wife, breaking her arm and causing her to be hospitalized for about six weeks. ' In 1943, he hit her in the head with a stick *603 with such force as to require three stitches to be taken to close the wound. In 1944, he pushed her out of a door, precipitating her fall and fracture of her arm. In 1951, he accosted her while she was returning from a motion picture theater with a woman friend and forced her into his automobile. Being frightened, she jumped out of the car and, after this occurrence, he did not allow her to enter their home for some time.
On January 19, 1952, he again slapped his wife in the face and ordered her to leave the home, following which, the parties remained separated for seven months. During this period, the wife endeavored to prevail upon the husband to' allow her to return to the matrimonial domicile, employing her daughter as an intermediary.[1] Finally, in the month of August, her husband agreed to receive her in the home, and, from that time on, the parties lived together until December 29, 1952. On that date, the wife had just returned to their shop[2] from the business district in New Orleans, where she had paid some bills, when she was confronted by the husband, who admonished her for leaving the shop in the morning. During his tirade, he held in his hand a substantially large piece of wood, which he used for hanging clothes, and, believing that he would strike her, the wife retreated to the kitchen of the home, which adjoins the place of business. She was closely followed therein by the husband, who began to chase her around the room, ordering her to get out. Being in fear for her safety, the wife left home and later moved to her mother’s residence, where she presently abides.
The main contention of the husband on this appeal is that a reconciliation has been effected as to all of the prior brutal conduct, to which we have referred above, and that, since the reconciliation in August of 1952, he has not abused his wife or otherwise been guilty of any cruel treatment such as to furnish good cause for her departure from their home.
We think it manifest that the en-' treaties of the wife to be allowed to return to her husband, evidence a condonation by her of his previous cruel treatment and excesses, and that his acceptance of her at the matrimonial domicile in August of 1952,. constituted a reconciliation.
On the other hand, we do not agree with defense counsel that the husband’s conduct, on December 29, 1952, was not of such an abusive nature as to justify the wife in leaving the matrimonial domicile permanently. Indeed, in view of the husband’s past record, the belief of the wife that he would administer to her corporal punishment with the stick he held in his hand was unquestionably justified, and we entertain no doubt that his belligerent attitude *605 and conduct toward her on that occasion established cruel treatment.
 It is, of course, well settled under our law that a single instance of cruel treatment will warrant a decree of separation. Sliman v. Sliman, 155 La. 397, 99 So. 343; Schneider v. Schneider, 214 La. 759, 38 So.2d 732. And, whereas Article 152 of the LSA-Civil Code prescribes that a reconciliation of the parties extinguishes the action of separation and all acts which might have provided cause for a separation, Article 153 declares that where a new cause for separation has arisen since the reconciliation, the past conduct may be considered to corroborate the new suit. See Cass v. Cass, 34 La.Ann. 611; Jolly v. Weber, 36 La.Ann. 676; O’Grady v. Larkin, 48 La. Ann. 853, 19 So. 740; Hill v. Hill, 112 La. 770, 36 So. 678; and Schoeffner v. Schoeffner, 158 La. 933, 105 So. 18. When the act which brought about the last separation of the parties is considered in the light of the husband’s past conduct, the result reached in the court below seems not only appropriate, but inescapable.
The only other question presented for decision relates to the quantum of the fee allowed to the attorneys for the wife, which fee is payable out of the community, property. Her counsel assert that the services rendered by them are worth $1000. However, since most of the services were performed under the eye of the trial judge, we are loathe to disturb the discretion he has exercised in fixing a fee of $750, which appears to be neither excessive nor inadequate.
The judgment is affirmed.

. There were three children born of the marriage, all of whom are adults.

. The husband has been engaged in the cleaning and pressing business for many years and the wife worked with him.