CULPEPPER, Judge.
After approximately 25 years of marriage, plaintiff and defendant were first judicially separated from bed and board by a judgment dated October 27, 1958, following which, on October 30, 1958, they entered into a voluntary settlement of the community property, each receiving considerable amounts of movable and immovable property. On January 23, 1959, they entered into a written reconciliation and lease agreement under the terms of which they agreed that they would again become husband and wife, but they would remain separate in property and no community of acquets and gains would exist between them. The said reconciliation agreement provided further that the plaintiff, Oscar Sylvester, Jr., leased from the defendant “her 40 head of registered cows, barns, pastures that she presently owns at her homeplace west of Ville Platte — etc.” and that she receive all of the benefits from the cattle during the term of the lease, in consideration of which he agreed to pay certain utility bills, grocery bills, etc. (The validity of this lease agreement is contested by the defendant for several reasons, including the grounds that plaintiff and defendant actually became reconciled by living together as man and wife for the period, December 3, 1958 through December 10, 1958, thereby incapacitating themselves to enter into such a contract.) After the signing of said reconciliation agreement and lease, plaintiff and defendant again lived together as man and wife until they separated finally on or about March 11, 1960, following which they were again judicially separated from bed and board by judgment dated May 9, 1960.
The instant suit was filed on May 25, 1960, by the plaintiff, Oscar Sylvester, Jr., against his said wife to recover certain livestock registration papers “affecting a herd of polled hereford cattle, part of which herd belongs to petitioner, and part of which belongs to defendant, but upon which petitioner has a lease;”, as well as certain *718 personal belonging's and moneys advanced to her.
In her answer, the defendant denied generally the allegations of plaintiff’s petition, denied the validity of the said lease agreement and filed a reconventional demand in which she prayed that Oscar Sylvester, Jr. be ordered to:
“1. Convey and deliver unto her, forty (40) certain head of registered cattle and the offsprings therefrom since October 30, 1958 until date of delivery, or in the alternative, if delivery is impossible, pay your petitioner in reconvention, $37,500.00, the value of said cattle.”
(The community settlement entered into on October 30, 1958, following their first judicial separation, contains the provision that Oscar Sylvester, Jr. receive “All of the cattle except forty (40) heads to be chosen by Lola Sylvester alternatively with Oscar Sylvester, until the said Lola Sylvester has received her forty (40) heads.”, but actually this portion of the agreement has never been carried out by the parties.)
“2. Convey and deliver unto her, one-half of the 1958 rice crop and one-half of all of the rice which was stored in the dryers situated on his property described as Item No. 8 of the partition of October 30, 1858 or the value thereof, the value being $2,500.00.
“3. Convey and deliver unto petitioner in reconvention, one-half of all of the horses owned by them as of October 30, 1958 and/or the value thereof, the value being $600.00.
“4. Convey and deliver unto petitioner in reconvention, certain lumber, roofing, quarry tile, feed and hay valued at $950.00 or the monetary value thereof.
“5. Convey and deliver unto petitioner in reconvention, that certain house, at his expense, located on the property described in Paragraph 22 of respondent’s answer.
“6. Convey and deliver unto petitioner in reconvention that certain cattle chute, cattle trailer, and cut-a-way plow taken from her property, valued at $750.00.”
After a lengthy trial the lower court entered judgment on June 30, 1961, holding as follows: (1) Annulling the lease agreement dated January 23, 1959; (2) denying plaintiff’s claim for the sum of $1,000 allegedly advanced by plaintiff to defendant during their period of reconciliation; (3) decreeing that the lumber, roofing, quarry tile, feed and hay, cattle chute, cattle trailer and cut-a-way plow is the property of Oscar Sylvester, Jr.; (4) decreeing that the gas stove, safe and all contents thereof, one shotgun collection, personal family portraits and pictures, original and copies of the Sylvester family tree, large rotisserie, one Remington typewriter, one combination filing cabinet and one portable television set, with table, are the property of Oscar Sylvester, Jr., and Lola Sylvester is ordered to deliver same to him within thirty days; (5) decreeing that Lola Fruge Sylvester is the owner of 40 head of full grown cows, to be chosen alternately by herself and plaintiff as provided in the original partition dated October 30, 1958; (6) decreeing that Lola Fruge Sylvester is the owner of the offsprings of said 40 head of cows since the date of the partition agreement, to wit: 16 two year old heifers and 16 two year old bulls, as well as 16 one year old heifers and 16 one year old bulls to be alternately chosen by the parties in the same manner as above; (7) decreeing that the 104 head of cattle above described be chosen and delivered by plaintiff within thirty days from the signing of said judgment and in default of delivery of these animals to the said Lola F. Sylvester, she is granted a money judgment against Oscar Sylvester, Jr. for the sum of $31,200; (8) decreeing judgment in favor of Lola Fruge Sylvester for the sum of $2,500 as her share of the 1958 rice crop; (9) decreeing that the plaintiff, Oscar *719 Sylvester, Jr., move that certain house located on a tract of land near Ville Platte, Louisiana, within thirty days after the signing of said judgment to a lot in Evangeline Parish to be designated by Lola Fruge Sylvester or in default thereof that the said Lola Sylvester have money judgment against Oscar Sylvester, Jr. in the sum of $800; (10) decreeing that Oscar Sylvester, Jr. deliver within thirty days of the signing of said judgment unto said Lola Fruge Sylvester two certain saddle horses, being the remaining two horses owned by plaintiff and defendant prior to their separation in 1958; (11) decreeing that upon receiving her cattle in accordance with this judgment, Lola Fruge Sylvester deliver to Oscar Sylvester, Jr. all cattle registration papers, except those on cattle which she receives in accordance with this judgment.
From said judgment the plaintiff, Oscar Sylvester, Jr., has appealed, contending that the trial judge erred as to: (1) the cattle, (2) the rice crop, (3) the lease, (4) the horses. The defendant, Lola Fruge Sylvester, has answered the appeal contending: (1) that she should be awarded the lumber, roofing, quarry tile, feed and hay, a cattle chute, a cattle trailer, a cut-a-way plow, one certain safe and a certain gas stove; (2) awarding her all future offsprings of the cattle until the delivery of said cattle or in default thereof a money judgment for the sum of $300 per head for said future offsprings; (3) contending that the award for her one-half of the 1958 rice crop should be increased from $2,500 to $7,768; (4) contending that the total judgment should be the sum of $46,800; (5) contending that the lower court’s judgment should be amended so as to provide for legal interest on this money judgment from date of judicial demand until paid; (6) contending that the lower court judgment should be amended so as to provide that all court costs should be assessed to the plaintiff, Oscar Sylvester, Jr.
Addressing ourselves to the issues presented, in the order in which they are disposed of in the lower court’s judgment, as listed above, we shall first consider the validity of the lease agreement entered into between plaintiff and defendant on January 23, 1959. The first grounds on which defendant attacks the validity of the lease agreement is that it was entered into after a reconciliation and that it is therefore a forbidden contract under the provisions of-LSA-Civil Code, Article 1790 which provides that a husband and wife are incapable of contracting with one another. LSA-Civil Code, Article 155; Reichert v. Lloveras, 188 La. 447, 177 So. 569; Moody v. Moody, 227 La. 134, 78 So.2d 536. The evidence shows that while they were living separate and apart plaintiff was injured in an automobile accident on or about November 30, 1958, and while he was in the hospital he was visited there by the defendant. On his release from the hospital plaintiff went to the home of defendant on about December 3, 1958 where he remained, sleeping in the same bedroom with defendant, and living as man and wife with her until on or about December 10, 1958. Although plaintiff denies that he spent the night in the home or that he lived together with defendant as man and wife during this period of time, it is our opinion that the testimony of the defendant as corroborated by that of their son, Jerry Sylvester, 23 years of age, and their mutual friend, Mr. Albert Tate, Sr., proves by a clear preponderance that plaintiff and defendant did live together as man and wife for this period of approximately one week, thereby becoming reconciled and destroying the effect of the judgment of separation except insofar as it dissolved the community. See Collins v. Collins, .194 La. 446, 193 So. 702; Reichert v. Lloverás, 188 La. 447, 177 So. 569. In view of this conclusion by us, we find it unnecessary to discuss the additional arguments made by defendant that the said lease agreement is invalid, regardless of the reconciliation, because even though judicially separated, but not divorced, they still remained man and wife, and were incapable of contracting except for the limit *720 ed purposes allowed under LSA-Civil Code, Article 2446. See Civil Code Article 1790 and Russo v. Russo, 205 La. 852, 18 So.2d 318. We likewise find it unnecessary to discuss defendant’s argument that the lease agreement was invalid because it contained a potestative condition.
The next item covered in the lower court’s judgment is plaintiff’s claim for the sum of $1,000 allegedly loaned to defendant after they were reconciled and while they were living together as man and wife. We note that neither party on appeal has complained of the lower court’s judgment as to this item and therefore we are not called upon to discuss it.
The judgment of the lower court decreed Oscar Sylvester, Jr. to be the owner of “the lumber, roofing, quarry tile, feed and hay, cattle chute, cattle trailer and cut-a-way plow”. The dispute as to ownership of these items of property arises out of the community settlement dated October 30, 1958, in which Oscar Sylvester, Jr. received under Item No. 15 the following:
“15. All of the movable equipment, including tractors, bulldozers, etc. except a 1956 Cadillac and a 1956 Chevrolet pickup truck, and a 1954 tractor with low mower”.
In said community settlement Mrs. Sylvester received the following property known as the “homeplace” and described under paragraph lettered “N” as follows:
“N. A certain tract of land, together with the home and all other buildings, contents and improvements, furniture, fixtures, linens and contents whatsoever therein contained and thereunto belonging, located thereon and thereto appertaining, containing 80 acres, more or less, located in irregular Section 51 * # * »
All of the movable property in question here was located on the said 80 acres of land at the time Mrs. Sylvester acquired it in said community settlement. In our opinion the language contained in the paragraph lettered “N” above is clear that Mrs. Sylvester received the 80 acre homeplace, together with all the “buildings, contents and improvements, furniture, fixtures, linens and contents whatsoever therein contained, and thereunto belonging” which necessarily would include the movable property herein-above listed which was located in the buildings or on the property at the time of the community settlement. We see no merit in plaintiff’s contention that under the provisions of paragraph No. 15 quoted above, he received all movable equipment except that specifically excluded under said paragraph No. 15. Those items which might be classified as “equipment”, which are in controversy here, are the cattle chute, cattle trailer and cut-a-way plow, all of which were located on the said 80 acre homeplace received by Mrs. Sylvester and are im-movables by destination. See the decision very recently rendered by this court in the case of LaFleur v. Sylvester, Jr., 135 So.2d 91 bearing No. 394 on the docket of this Court of Appeal in which we held in a dispute arising out of this identical community property settlement that a manure spreader located on this same 80 acre homeplace was immovable by destination, and therefore belonged to Mrs. Sylvester. The remaining items of property in controversy here, to wit: the lumber, roofing, quarry tile, feed and hay, were contents of the buildings on the said 80 acres and therefore went to Mrs. Sylvester and certainly cannot be claimed by Oscar Sylvester, Jr. They are not items of “movable equipment” as that term is commonly used and clearly intended by the parties to this community settlement. It is therefore our conclusion that this portion of the lower court’s judgment must be reversed and these listed items of property declared to be owned by Mrs. Sylvester.
The next portion of the lower court’s judgment declares Oscar Sylvester, Jr. to be the owner of a certain gas stove and a safe with all the contents thereof, as well as a shotgun collection, personal *721 family portraits, etc. In answering the appeal Mrs. Sylvester contests only the gas stove and the safe with contents. The evidence shows that after plaintiff and defendant became reconciled, said stove was purchased by Mr. Sylvester, but installed by him, in the home which was the separate property of Mrs. Sylvester located on the said 80 acre homeplace. It is perhaps unnecessary to restate, that under the authorities cited above the reconciliation after judgment of separation from bed and board did not re-establish the community of ac-quets and gains, nor in the instant case did the parties ever enter into a notarial instrument re-establishing said community under the provisions of LSA-Civil Code Article 155. Thus we have a gas stove, purchased and owned by Mr. Sylvester and installed in a dwelling belonging to Mrs. Sylvester. Counsel have not argued this particular point at length in their briefs, but we understand defendant's contention to be that this gas stove has become immovable by nature (LSA-C.C. Art. 467) or by destination (LSA-C.C. Art. 468). However, we fail to see how this argument can have validity in the face of a specific provision of LSA-Civil Code, Articles 467 and 468 that such a fixture becomes immovable by nature or by destination only when actually installed by the owner of the building for the use or convenience thereof. In the instant case the gas stove was not installed by the owner of the building. It is likewise clear that the gas stove has not become a part of the building, so that it cannot be removed without breaking or injuring the fixture or the building. LSA-Civil Code, Article 464; In re Receivership of Augusta Sugar Company, 134 La. 971, 64 So. 870.
Although some evidence was introduced in an attempt to show Mr. Sylvester donated this gas stove to Mrs. Sylvester, it is our opinion that the preponderance of the evidence is to the contrary and that actually Mr. Sylvester stated that if he ever left again he would take his stove with him. We therefore conclude that the gas stove in question is the property of Mr. Sylvester.
As regards the safe and its contents, the record is clear that this particular safe was community property acquired before the community settlement and that it was located in the dwelling on the 80 acre home-place at the time of said agreement. Therefore, under the provisions of paragraph “N” quoted above from said community settlement, this safe, like the other contents of the buildings, became the property of Airs. Sylvester and remains so.
.The next issue is as regards the 40 head of cattle and their offspring. The evidence shows that at the time of the community settlement, the said community owned approximately 200 head of registered hereford cattle, as well as certain common cattle. After the first judgment of separation from bed and board on October 27, 1958, plaintiff and defendant entered into said community settlement dated October 30, 1958. This agreement first stated that during the existence of the community, plaintiff and defendant had acquired certain movable and immovable property and that they desired to “effect a partition and division of the same” and that therefore Lola Fruge Sylvester “does by these presents grant, bargain, convey, transfer, assign and set over” to Oscar Sylvester, Jr. several tracts of real estate and several items of movable property. Paragraph No. 16 in a list of property received by Oscar Sylvester, Jr. reads as follows:
“16. All of the cattle except 40 heads to be chosen by Lola Sylvester alternatively with Oscar Sylvester, until said Lola Sylvester has received her 40 heads.”
Then in the list of property received by Mrs. Sylvester under said community settlement the paragraph lettered “S” reads as follows:
“S. 40 head of cattle to be selected by Lola Fruge Sylvester from the herd *722 of the community as per Item 16 above.”
The said community settlement then continues with the statement that “this partition is limited to the division of the community of acquets and gains only insofar as the specific items hereinabove particularly conveyed from one to the other and no further.” The parties declared that the properties received by each were of equal value and no sum of money was paid by either.
The cattle have never been divided pursuant to this agreement. The evidence shows that on one occasion plaintiff and defendant went out to make the division, but it rained and they put it off. During her testimony, defendant admitted that she did not make demand on plaintiff to deliver her 40 head of cattle until after the instant suit was filed, her attorney wrote a letter to the plaintiff of date, May 31, 1960, demanding that he set a date to divide the cattle in accordance with the agreement. Plaintiff admitted receiving this letter, but failed to comply with its request for the stated reason that he thought he had a right to keep the cattle under the existing lease.
The evidence shows that as of the date of the trial of the instant case in the lower court on March 30, 1961, the plaintiff had in his possession the said herd of cattle which consisted of about 230 head, including 104 cows, 64 heifers and 39 bulls. Although Mr. Sylvester has possession of the cattle, Mrs. Sylvester has possession of all of the registration papers on the registered cattle.
Although the plaintiff introduced considerable evidence in an effort to show that Mrs. Sylvester has actually received her 40 head of cattle because she secretively took this number of cows from the herd, which was being kept in the pasture on her 80 acre homeplace, it is our opinion that plaintiff has failed to prove such an occurrence. The record shows that pursuant to the above described lease agreement, plaintiff had possession of the cattle which were being cared for by plaintiff’s employees, using the barns and pasture on defendant’s 80 acre homeplace. The testimony of plaintiff’s caretaker that when he went to move the cattle after the 80 acre homeplace was sold by defendant to a Dr. Sylvester, there were only 20 head of an original 60 remaining, is contradicted by a number of witnesses for the defendant to the effect that the entire group of approximately 60 cattle remained there. It is therefore our conclusion that the evidence fails to show that Mrs. Sylvester has taken or received 40 head of cattle from the herd.
It cannot be disputed that Mrs. Sylvester is entitled to 40 head of cattle to be chosen in accordance with the agreement of October 30, 1958. When this is done, the remaining cattle, which were in the herd as of the date of said community settlement, will become the property of Mr. Sylvester and he is, of course, entitled to the registration papers on any cattle which go to him. The serious issue in this case is as to the ownership of the offspring which have been born since the date of the community settlement, which offspring at $300 a head, are worth many thousands of dollars.
Able counsel for plaintiff has presented an ingenious argument, the major premise of which is that the community settlement entered into on October 30, 1958, was not a partition, but instead was a sale “by weight, by tale, or by measure” by plaintiff to defendant of an unspecified and unidentified 40 head of cattle, to be chosen from the herd, which now belongs to the plaintiff under the provisions of said settlement agreement which states that she conveys to him “all of the cattle” except said 40 head to be chosen. Under what counsel for plaintiff calls “the theory of risk and fruits” he cites LSA-Civil Code, Article 2458 which provides that a sale by weight, by tale or by measure is not completed until after the things so sold have been weighed, counted or measured. Plaintiff cites LSA-Civil Code, Article 2467 for the proposition that the risk of the thing is on the vendor until the sale is completed, at which time the risk is *723 assumed by the buyer. Plaintiff also cites LSA-Civil Code, Article 2489 which provides that from the date of the sale all the profits belong to the purchaser. Finding no article of the Louisiana Civil Code which applies particularly to the fruits pending completion of an imperfect sale by weight, tale or measure, counsel cites many authorities from the French commentators and from the Common Law which hold the general proposition that under the law of sales he who bears the risk of the thing also receives the fruits. Applying these principles to the instant case, plaintiff argues that until this sale is completed by the parties choosing alternately from the herd until Mrs. Sylvester has her 40 head, the risk of the cattle is on Mr. Sylvester and therefore he should receive the offspring.
In our opinion this argument by plaintiff fails because its major premise is false, that is, the community settlement was a partition and not a sale. Our basic law of partition is LSA-Civil Code, Article 1289 which provides that no one can be compelled to hold property in indivisión with another. Under the provisions of LSA-Civil Code, Article 1294 partitions may be either voluntary or judicial. The jurisprudence of this state is well settled that whatever may be form of the instrument, every first settlement made between heirs or owners in indivisión, by which a state of indivisión is terminated, is in substance a partition. In the case of Ortego v. Morein, 212 La. 774, 33 So.2d 516 (La.Supreme Court 1948) the court held as follows:
“(4, 5) True, her title was evidenced by a regular credit deed executed by her, her co-heirs and her husband. But as hereinafter shown that transfer must be regarded as an essential step in the confection of a partition among all of the co-heirs, not as a purchase and sale transaction. As to a somewhat similar situation, this court said in Tyson v. Spearman, 190 La. 871, 183 So. 201. 205, that:
" ‘The next question for our consideration is whether or not the transaction of August 12th, 1919, between the defendants and Chesley Gibson is in fact a partition and not such a title as would support a plea of prescription of ten years acquirendi causa as was held by our learned brother below.
“ ‘As stated in the case of Tippett v. Jett, 3 Rob. 313, “ * * * whatever may be the form of the act, it is well settled, that every first settlement between heirs or partners by which a state of indivisión is terminated, is, in substance, a partition;” and, as expressed in the syllabus of the case of Westover v. Aime, 11 Mart., O.S. 443, “if heirs in dividing the property of their ancestor, held in common, pass an act of sale to each other, it will be regarded not as a sale but as a partition.” See, also, Corpus Juris, Volume 47, p. 267.’ ”
Regarding the offspring, defendant contends that Mr. Sylvester knew, or is presumed in law to have known, that the lease agreement was invalid and he is therefore a possessor in bad faith who owes to the owner all of the fruits and revenues produced during said period of bad faith possession. Defendant cites Guinea Realty Co., Inc. v. Battle, La.App., 1 So.2d 153; Ruth v. Buwe et al., 185 La. 204, 168 So. 776, and LSA-Civil Code, Article 3452 in support of this proposition. The cited cases held the possessor in bad faith of realty liable for rentals during the period of bad faith possession. In our opinion these authorities are not controlling in the instant case because Mrs. Sylvester is still not the owner of an identifiable 40 head of cattle. The entire herd was admittedly community property and on dissolution of the community by judgment dated October 27, 1958, became the property of Mr. and Mrs. Sylvester in the proportion of an undivided one-half interest to each. In the partition agreement of October 30, 1958, it was agreed that they would divide the herd by choosing alterna *724 tively until Mrs. Sylvester had received 40 head and Mr. Sylvester would receive the remainder. This method of division, as contracted by the parties, has never been performed and consequently each head of cattle is still owned, one-half by Mr. Sylvester and one-half by Mrs. Sylvester. Under the specific provisions of LSA-Civil Code, Article 500 “The young- of animals belong to the owner of the mother of them by right of accession.” Consequently, any offspring which have been born since the date of dissolution of the community on October 27, 1958, were born of cows owned in indivisión by plaintiff and defendant and the said offspring are therefore also owned in indivisión by plaintiff and defendant.
We cannot agree with our brother below that we should enlarge upon the contract which has been entered into between the parties by ordering that this dispute as to the offspring be settled by simply assuming that Mrs. Sylvester should have received 40 head of cattle and that she is therefore entitled to an estimated eighty per cent calf crop from 40 cows since the date of the partition. Under the evidence, it cannot be said that plaintiff or defendant is at fault for failure to divide the cattle in accordance with the partition agreement. It is noteworthy that Mrs. Sylvester admitted during the trial of this case that no demand was made on Mr. Sylvester to divide the cattle until after this suit was filed. The contract is the law between the parties and the court is not at liberty to make agreements for them. Blakesley v. Ransonet, 159 La. 310, 105 So. 354; Wiley v. Davis, 164 La. 1090, 115 So. 280; Stack v. De Soto Properties, 221 La. 384, 59 So.2d 428; LSA-Civil Code, Article 1945. Furthermore, the jurisprudence is well established that it is the duty of the courts to ascertain the intention of the parties and to enforce the contract as written. See Bourg v. Hebert, 224 La. 535, 70 So.2d 116 and the authorities cited therein.
In the instant case, the contract of partition contains no agreement as to the division of offspring born between the date of the partition agreement and the date on which the cattle are actually divided in accordance with the procedure set up in said contract. It is reasonable to assume that they did not anticipate this problem because they intended to divide the cattle shortly after the partition agreement was signed. However, we note that the partition specifically provides that “it is understood and agreed by the parties hereto that this partition is limited to a division of the community of acquets and gains only insofar as the specific items herein particularly conveyed from one to the other and no further.”
Furthermore, the construction which has been put upon the contract by both plaintiff and defendant indicates clearly that they considered the herd to be owned in indivisión until the terms of the partition agreement were carried out. In his petition in the instant suit, the plaintiff states that an unidentified portion of the herd belonged to the defendant. After this suit was filed, defendant made demand upon plaintiff for a division of cattle in accordance with the partition which clearly indicates her understanding that she did not own any particular 40 head of cattle. The law is clear that the interpretation placed on an agreement by the parties may be considered by the court in arriving at its true intention. See Simmons v. Hanson, 228 La. 440, 82 So.2d 757 and the cases cited therein.
It is therefore clear that the parties did not contract, nor did they intend to- contract as to the offspring. In our opinion, whatever offspring have been born of cows owned in indivisión by plaintiff and defendant since the date of dissolution of the community on October 27, 1958, are still owned in indivisión by plaintiff and defendant. Those born since October 30, 1958 were not covered by any agreement in the partition contract and cannot be awarded to either plaintiff or defendant in these proceedings. The same is true as to all offspring which may be born up until the *725 time that Mrs. Sylvester receives her 40 head of cattle, or receives payment for said 40 head of cattle, in accordance with this judgment. They own these offspring in indivisión and, if they desire, can partition them or sell or otherwise dispose of them as in the case of owners in indivisión.
The next issue is the lower court’s award of $2,500 to Mrs. Sylvester as her share of the 1958 rice crop. The paragraph lettered “T” in the partition agreement provides that Mrs. Sylvester receive “One-half of all of the 1958 rice crop and one-half of all rice now in the dryers situated on Item No. 8 of the property taken by Oscar” “Sylvester, Jr.” The evidence shows that the community owned three large farms on which different tenants cultivated a total of approximately 343 acres in rice during the year 1958. In addition, the community owned a water well used to flood a total of approximately 98 acres of rice planted on the lands of others in consideration of 25% of the rice crop. We •deem it unnecessary to discuss in detail the •evidence which shows clearly that during the crop year for 1958 the community actually received much more than $5,000 worth of rice as rentals from said land and water. In our opinion plaintiff has failed to prove that defendant has ever received her •one-half of the 1958 rice crop. By recon-ventional demand, defendant has prayed for only $2,500, to which amount her recovery is limited.
Although Mr. Sylvester argues that the partition agreement conveys to Mrs. Sylvester only one-half of the rice or rice proceeds received after the date of the agreement on October 30, 1958, it is our •opinion that the intention of the parties was clearly to divide equally “the 1958 rice crop” regardless of whether received before or after the partition.
On appeal, neither plaintiff nor defendant has complained of the lower court’s judgment insofar as it requires that Oscar Sylvester, Jr. move the house near Ville Platte within thirty days to a lot designated in Evangeline Parish by Mrs. Sylvester, or in default thereof, pay her the sum of $800. Therefore, this portion of the lower court’s judgment will not be considered.
The judgment appealed from orders Mr. Sylvester to deliver within thirty days to Mrs. Sylvester, two certain head of saddle horses, being the remaining two horses of four which belonged to the community at the time of the partition. No horses were mentioned in the partition agreement. The evidence shows that after the date of the partition agreement plaintiff sold two of the horses and he contends that he gave the money to Mrs. Sylvester. Defendant denies receiving the money for the horses and argues that she is entitled to the remaining two. Although there is nothing in the written partition agreement concerning horses, defendant contends that plaintiff agreed to give her two of the horses. However, no such agreement was proved. It is our opinion that the four horses were not covered by the partition agreement and were simply owned in indivisión by plaintiff and defendant at the time plaintiff sold two of them for $175. Defendant is clearly entitled to her reconventional demand for one-half of this price received for the two horses which were sold, but the remaining two are still owned in indivisión by plaintiff and defendant the same as the cattle offspring hereinabove discussed.
The lower court assessed two-thirds of the costs of court against Mr. Sylvester and one-third against Mrs. Sylvester. In her answer to this appeal defendant urges that all court costs should be assessed against Mr. Sylvester. The manner of assessment of court costs lies within the discretion of the court. LSA-Code of Civil Procedure, Article 1920. In view of the fact that both parties were only partially successful in their demands and partially cast, we see no abuse of the lower court’s judgment regarding the assessment of court costs.
As defendant has pointed out in her answer to the appeal, the judgment by *726 the lower court, must, of course, be amended so as to provide for interest at the legal rate on any money judgment.
For the reasons assigned, the judgment appealed from is amended so as to provide as follows:
(1) IT IS ORDERED, ADJUDGED AND DECREED that the lease agreement between plaintiff and defendant, dated January 23, 1959, is declared null and void and of no effect.
(2) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the demand by Oscar Sylvester, Jr., for judgment against Mrs. Sylvester in the sum of $1,000 allegedly loaned to her, is rejected.
(3) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the lumber, roofing, quarry tile, feed and hay, cattle chute, cattle trailer and cut-a-way plow are recognized and decreed to be the property of Lola Fruge Sylvester.
(4) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the gas stove is recognized and decreed to be the property of Oscar Sylvester, Jr. The safe and its contents are recognized and decreed to be the property of Lola Fruge Sylvester.
(5) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that within thirty days after this judgment becomes final, Oscar Sylvester, Jr. deliver to Lola Fruge Sylvester 40 head of the cattle which belonged to the community formerly existing between them and are now owned in indivisión by them and in the possession of the said Oscar Sylvester, Jr., the said 40 head of cattle to be chosen by Lola Sylvester alternatively with Oscar Sylvester until the said Lola Sylvester has received her 40 head, the remainder of said cattle then to become the property of plaintiff, all in accordance with the partition agreement of date, October 30, 1958, or in default thereof by the said Oscar Sylvester, Jr., judgment is hereby rendered in favor of defendant and against the plaintiff, as of the date of said default, for the sum of $12,000, together with legal interest thereon from due date until paid.
(6) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all offspring which have been born since October 30, 1958 of said cows owned in indivisión by plaintiff and defendant, be likewise recognized and decreed to be owned by plaintiff and defendant in indivisión, one-half to each, this to include all offspring born of said cows between the said date of said partition and the date on which said cows are no longer owned in indivisión, by reason of compliance with this judgment as aforesaid.
(7) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Lola Fruge Sylvester and against Oscar Sylvester, Jr. for the sum of $2,500, together with legal interest thereon from date of judicial demand until paid, representing her share of the 1958 rice crop.
(8) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the defendant and against the plaintiff for the sum of $87.50, together with legal interest thereon from date of judicial demand until paid, representing her one-half of the value of the two horses which were owned in indivisión by plaintiff and defendant and sold by plaintiff. Plaintiff and defendant are recognized and decreed to be the owners of the remaining two horses in the proportion of an undivided one-half interest to each.
(9) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff, Oscar Sylvester, Jr. move that certain house located on the following described property, to wit:
A certain lot or parcel of ground, together with all buildings and improvements located thereon, and thereto appertaining, located in Section 50, T4S, R2E, Louisiana Meridian, in Evangeline Parish, Louisiana, lying immediately southwest of the town of Ville Platte, Louisiana, bounded now or for *727 merly on the north by Rene Soileau’s subdivision; south by Clement Morein, east by Edward Thorn, Jr., and west by Francois Frank and Virginia Vi-drine. Said lot having a front on the north of 50 feet, by a depth of 159 feet, running north and south between parallel lines.
within thirty days, after this judgment becomes final, to a lot, designated in Evangeline Parish by Lola Fruge Sylvester, at his cost, or in default thereof, that the said Lola Fruge Sylvester be and she is hereby granted a money judgment against the said Oscar Sylvester, Jr. in the additional amount of $800, together with legal interest from the date of judicial demand until paid.
(10) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that upon receiving any cattle in accordance with this judgment, all registration papers in the possession of Lola Fruge Sylvester shall be delivered to Oscar Sylvester, Jr., with the exception of the registration papers on the cattle which she receives in accordance with this judgment, and should the said Oscar Sylvester, Jr. elect to pay the said sum of $12,000 for the cattle, rather than make delivery in accordance with this judgment, then all registration papers shall be delivered to him by the said Lola Fruge Sylvester immediately upon actual payment for said cattle.
(11) IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff pay two-thirds of the costs in the district court and the defendant pay the remaining one-third. All costs of this appeal are assessed against the plaintiff and the defendant in the proportion of one-half to each.
Amended and affirmed.