146 So.2d 154

Oscar SYLVESTER, Jr.

v.

Mrs. Lola Fruge SYLVESTER.

No. 46075.

Nov. 5, 1962.

Frugé & Foret, Ville Platte, Tate & Tate, Mamou, for relator.

Lewis & Lewis, Opelousas, Fusilier, Pucheau & Soileau, Ville Platte, for respondent.

McCALEB, Justice.

We granted a writ herein to review the holding of the Court of Appeal, Third Circuit, that defendant, the former wife of plaintiff, owned an undivided one-half interest in the offspring of a herd of 200 polled Hereford cattle notwithstanding that she had, under Item 16 of a community property partition and settlement dated October 30, 1958, conveyed to plaintiff "All of the cattle except forty (40) heads to be chosen by Lola Sylvester alternatively with Oscar Sylvester, until the said Lola Sylvester has received her forty (40) heads."

The instant litigation is an aftermath of this community property settlement. In May, 1960, plaintiff filed the suit to recover, among other things, certain livestock registration papers, affecting the herd of polled Hereford cattle, which were in the possession of his former wife. In a reconventional demand the defendant contended that, under the above quoted Item 16 of the property settlement, she was entitled to recover from plaintiff not only forty head of cattle from the herd as provided therein but also the offspring of the forty head that she would select.

A protracted trial ensued as a consequence of the many controversial claims and counter-claims of the parties against each other following their judicial separation and community property settlement, their subsequent reconciliation and their ultimate separation and divorce. Insofar as the division of cattle is concerned, the rights of the parties have remained executory as Mrs. Sylvester has never selected alternatively with Mr. Sylvester the forty head of cattle. It was also found by the Court of Appeal that "Under the evidence, it cannot be said that plaintiff or defendant is at fault for failure to divide the cattle in accordance with the partition agreement". See Sylvester v. Sylvester, 137 So.2d 716, at page 724. From our examination of the record, we think that this finding is correct.[1]

The district judge, being of the opinion that Mrs. Sylvester was entitled to the offspring of 40 head of cattle and that, had she selected them, the 40 head would have produced 64 offspring (this conclusion was based on evidence that the normal annual reproduction rate of the animals is 85 to 90%) in the approximate two-year period elapsing between the partition agreement and the trial of the case, rendered judgment in her favor for 104 head of cattle to

1. It is evident that the selection of the forty head of cattle was deferred when the parties became reconciled shortly after the community property settlement was confected. During their reconciliation, to wit, on January 23, 1959, Mrs. Sylvester leased all cattle in which she had retained an interest (40 head), together with barns, pastures, etc., to Mr. Sylvester. This lease was found to be a nullity by the district court and the Court of Appeal. The question of its validity is not before us as our consideration of the case has been limited by our order to the question of ownership of the offspring of the cattle.

be chosen and thereafter delivered by Mr. Sylvester within 30 days from the finality of the judgment.

On appeal, the Court of Appeal affirmed the judgment insofar as it recognized Mrs. Sylvester's contractual right to select 40 head of cattle from the herd and ordered Mr. Sylvester to deliver the 40 head to be selected by Mrs. Sylvester within 30 days after the finality of the judgment. However, as stated above, the court amended the order of the district judge as to the offspring of the cows and decreed that plaintiff and defendant be recognized to be co-owners in indivision, in the proportion of an undivided one-half to each, of all offspring of the herd that had been born since the partition agreement. In arriving at this conclusion, the court reasoned that the partition agreement had no effect on the ownership of the offspring because the parties did not anticipate that there would be offspring, it being their intention to divide the cattle in accordance with the procedure set forth in the partition shortly after it was signed. Thus, it was deduced that no contractual engagement came into being as to the offspring of the cows, the court taking cognizance of a stipulation in the partition agreement that it was limited to a division of the specific items of community property " * * * herein particularly conveyed from one to the other and no further."

We think the Court of Appeal erred in its resolution for two reasons. In the first place, while we agree with the Court of Appeal that the partition did not contemplate that offspring would be born prior to the time Mrs. Sylvester would select the 40 head she contracted to receive in settlement of her community interest in the herd, this circumstance does not warrant a holding that Mrs. Sylvester retained an undivided one-half interest in the offspring of the herd. On the contrary, such a conclusion fails to give effect to her contract (for which she received adequate consideration) by which she reduced her interest from an undivided one-half to 40 head of a herd of 200, or to $^{40}/_{200}$ths, or one-fifth of the whole. Selection by and delivery to Mrs. Sylvester of the 40 head was not essential to produce a change in the proportion of her ownership in common of the herd as she transferred to her husband all her interest in the cattle except the forty head which he agreed to deliver to her when she selected them in accordance with the procedure set forth in the partition settlement. And since her ownership therein was diminished from an undivided one-half to an undivided one-fifth, it matters not that the parties neither specifically included offspring of the herd in their agreement nor envisioned that there would be offspring before Mrs. Sylvester selected, and obtained delivery of, the 40 head. For the co-ownership of the herd in

the parties carried with it the right of accession and, under Article 500 of the Civil Code, the offspring of the cows belonged to the owner of the mother of them. Thus, the herd being owned in indivision by Mr. and Mrs. Sylvester in the proportions of an undivided four-fifths to Mr. Sylvester and an undivided one-fifth to Mrs. Sylvester, the offspring are owned by them in the same proportions.

Moreover, even were it otherwise, the judgment of the Court of Appeal could not stand as its decree in favor of Mrs. Sylvester of a one-half interest in the offspring of all the cows is ultra petitionem, or for a greater proportion of offspring than she demanded.[2] See Article 425 of the Code of Civil Procedure, which reenacted in essence Article 156 of the Code of Practice of 1870.

In this Court, counsel for Mr. Sylvester vigorously contend, as they did in the Court of Appeal, that the partition agreement of October 30, 1958 is not truly a partition but, rather, is a sale or exchange. From this premise it is argued that it is a sale by weight, tale or measure and, under Article 2489 of the Civil Code, the profits or fruits thereof (offspring of the cows) belong to the purchaser.

This contention was properly rejected by the Court of Appeal on the ground that the primary postulate of counsel—viz., that the community settlement was a sale and not a partition—is unsound. Since we are in accord with the Court of Appeal's view on this point, detailed discussion by us would be superfluous and it suffices to cite that court's opinion. See 137 So.2d at page 723.

During oral argument of this case, mention was made anent plaintiff's right to reimbursement for cost of feed, upkeep and other expenses of the offspring. This, of course, is a matter of accounting between the parties and, in the absence of an agreement, might be the subject of further litigation. All that this Court can do under the present condition of the record is to declare the interest of Mrs. Sylvester in the herd of cattle to be an undivided one-fifth and the Court of Appeal's opinion will be amended to that extent.

Accordingly, it is ordered that Paragraph (6) of the decree of the Court of Appeal, Third Circuit, be and it is amended so as to declare that all offspring of the herd of polled Hereford cattle which have been born since October 30, 1958 be recognized to be owned by plaintiff and defendant in indivision in the proportion of an undivided

2. The prayer of Mrs. Sylvester's reconventional demand is that plaintiff convey and deliver unto her " * * * forty (40) certain head of registered cattle and the offsprings therefrom since October

30, 1958 until date of delivery or, in the alternative, if delivery is impossible, pay your petitioner in reconvention $37,-500, the value of said cattle."

four-fifths (⅘) to plaintiff and an undivided one-fifth (⅕) to defendant, this to include all offspring born of said cows between the date of said partition and the date on which the herd is no longer owned in indivision by reason of compliance with Paragraph (5) of the judgment of the Court of Appeal. As thus amended, Paragraph (6) of the judgment of the Court of Appeal is affirmed. The costs incurred in this Court are to be paid by defendant, Mrs. Lola Fruge Sylvester.