TATE, Judge.
The plaintiff wife sues the defendant husband for a judicial separation. The husband reconvenes for a separation on the ground of the wife’s fault. The trial court dismissed both the wife’s demand and the husband’s reconventional demand for separation, stating that neither party had proven fault on the part of the other.
The wife appeals, contending that the trial court erred in failing to hold that the wife was entitled to a judicial separation on the ground either of her husband’s cruel treatment of her, LSA-Civil Code Art. 138(3), or of his abandonment, LSA-Civil Code Art. 138(5). By answer to the appeal, the husband contends that the evidence shows that instead he himself is entitled to a judicial separation on the ground of his wife’s abandonment of him by her refusal to live with him.
At the time of their marriage, the plaintiff wife was nineteen years of age, the husband twenty-two. The husband was a student at a university. After their marriage on May 16, 1964, the couple lived *278 together for a little over three weeks. On' June 9th, by mutual agreement, the wife returned temporarily to her parent’s home in Bunkie, while the husband reported to Baton Rouge for an orientation course prior to his entering into employment in Crowley approximately on July 15th.
At the time this suit was filed on August 18th, a little over two months after the marriage, the husband, then working in Crowley, was still living in his fraternity house in Lafayette.
The uncontradicted evidence shows, however, that the husband had in July made arrangements to secure an apartment in Crowley for himself and his wife to live in; but the apartment did not become available until the last week in August, after his wife had filed suit for separation based in part upon his failure to provide a home for her.
With regard to the husband’s re-conventional demand for separation on the grounds of abandonment, the above statement of uncontradicted facts clearly shows that the wife did not abandon the husband. “Separation grounded on abandonment by one of the parties can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without a lawful cause, [and] has constantly refused to return to live with the other * * * ” LSA-C.C. Art. 143, as amended in 1958. Here, the wife did not refuse to live with the husband, instead she was impatient with his tardiness in supplying a common dwelling for her to live with him in marriage.
A far closer question is presented with regard to the wife’s claim that the husband failed to provide her with a home and was otherwise at fault in the failure of the couple’s brief marriage.
We think it is fair to state the evidence shows that from the first the husband was unenthusiastic about the marriage, into which he had entered at the wife’s insistence at a time when he feared it might disrupt his plans for further graduate education.
Nevertheless, certain recriminations, between the two in family quarrels during-the three weeks they lived together, and a certain letter the husband wrote stating he-did not love his wife, cannot be considered as grounds for separation on the grounds, of cruelty because shortly afterwards the-couple reconciled and spent the weekend together on July 25-26. At that time they determined to make a go of their marriage- and to secure an apartment in Crowley in which to live together. Under LSA-C.C. Art. 152, “The action of separation shall be extinguished by the reconciliation of the-parties, either after the facts which might have given ground to such action, or after the action has been commenced.” See: Collins v. Collins, 194 La. 446, 193 So, 702; Stewart v. Stewart, La.App. 1 Cir., 175 So.2d 692; Sylvester v. Sylvester, La.App. 3 Cir., 137 So.2d 716.
The plaintiff’s counsel ably argues, however, that this forbearance by the wife in not bringing suit earlier, and in her staying with her husband over the weekend,, were merely evidence of the wife’s earnest, effort to save the marriage. It is argued that, under the jurisprudence, such forbearance and continued living together is-not considered a reconciliation barring her from judicial separation on the grounds of a consistent past course of mental cruelty of her husband, citing Carriere v. Carriere, La.App. 1 Cir., 147 So.2d 668, and cases therein cited.
The jurisprudence relied upon by the-plaintiff concerns instances of the wife’s, forbearance over a long period of abusive treatment, which continued intermittently up to the time of suit. The courts therein rejected the husband’s claim that his previous misconduct could not be considered because of alleged condonation through the spouse’s continued cohabitation; the courts pointing out that under LSA-C.C. Art. 153, following a reconciliation, an aggrieved spouse may bring an action for separation *279 if a new cause of action subsequently arises and may then make use of the other spouse’s misconduct prior to the reconciliation in support of the ground for separation alleged as having afterward occurred. DeJean v. DeBose, 226 La. 600, 76 So.2d 900; Collins v. Collins, cited above, at 193 So. 703-704.
Unlike in the cases relied upon by the plaintiff wife, in the present situation the husband and wife’s weekend together in marriage was a deliberate act of reconciliation, not followed afterwards (as we will show) by any cruel treatment by the defendant spouse. For instance, in Carriere v. Carriere, cited above, the course of the husband’s neglect and mental cruelty continued up until a week or so before suit, whereas the couple had not cohabited for over two months.
Here, however, the husband and wife spent the weekend of July 25-26 together and made plans to live together in Crowley when the husband obtained a suitable apartment. The wife then visited in Slidell almost a week, writing her husband on July 29th that she could look at the Crowley apartment after her husband had selected a few. Tr. 23. In this letter, she indicated she would be staying in Bunkie during the week next following (i. e., until August ■8th), until her brother Dicky came. On the weekend of August 8th, the plaintiff wife brought her brother and sister to meet her husband in Lafayette, and the brother attempted to talk to the defendant husband about his intentions.
, According to the wife, the husband ignored answering when the subject was brought up of when they would live together in Crowley, although all three had been to a friendly dinner and for drinks together. Tr. 91-92. According to the busband, he did not in his conversation with the brother (at which the wife was not present) in any way refuse to provide .a home for his wife, instead maintaining his attitude that he should like to try to make the marriage a success until at least the child they expected was born, hoping that “when the child is born all the things are going to change for us”.
The husband testified that he expected the wife to get in touch with him further. Instead, he said, his wife retained a lawyer, who on August 10th asked him to come by his law office. His wife met him in her lawyer’s office, where (the husband testified) she remarked, “I think this [i. e., the suit for separation] is the only thing that can happen.” Tr. 100.
Only the two spouses testified. We are unable to hold that the trial court committed manifest error in evaluating this testimony as failing to show that the husband-had abandoned the wife or had refused to provide a home for her. In so holding, we take into consideration that his failure to make a direct reply to his wife’s brother as to his intentions may be considered as resentment at meddling by members of the wife’s family, rather than a refusal to provide a home, taken into consideration with the fact that the husband had actually looked for and did locate a small suitable apartment prior to this (which was not available for occupancy until late August), Tr. 70-71, about which his wife admitted she had been informed prior to her filing suit for separation, Tr. 90. And of course, the temporary separation for economic reasons by mutual agreement of the parties did not constitute abandonment of either by the other. LS A-C.C. Art. 143; Mason v. Mason, La.App. 2 Cir., 155 So.2d 216.
In summary, the husband was not enthusiastic about establishing a family domicile, at least until his employment plans became more definite, but he never refused to do so. In fact, he had obtained a small apartment which would and did become available for the couple’s use about two weeks after the couple’s last meeting, except that the suit for separation had intervened. Without necessarily approving the husband’s tardiness and reluctance in establishing a family home as expeditiously as *280 possible, nevertheless under the trial court s evaluation of the testimony of the spouses we are unable to say that such conduct amounted to a refusal to furnish his wife a home such as would constitute a ground for judicial separation.
A different question would be presented to us had the husband’s conduct persisted longer or had his failure to furnish his wife a home constituted a direct refusal of her request for such rather than a procrastinating attitude in which his wife to a large extent concurred until a day or so before she retained counsel to file the present suit.
For the reasons assigned, we affirm the trial court’s holding that neither spouse had preponderantly proved any cause of action for judicial separation alleged by them. The costs of this appeal are to be paid one-half by the plaintiff-appellant, one-half by the defendant-appellee.
Affirmed.