FRUGÉ, Judge.
This is an action for a divorce or alternatively a separation from bed and board instituted by the plaintiff, Marie C. Havens, against her husband, Andy Havens. The defendant reconvened for a divorce or alternatively a separation from bed and board. The trial court denied both parties’ respective demands, and the plaintiff appealed to this court.
The plaintiff alleged that Mr. Havens committed several acts of adultery with one Tricille (Trellis) Northcutt, the wife of an individual who was killed by the defendant. The defendant was tried and acquitted of the charge of murdering Herman Northcutt, the husband of the alleged corespondent. The plaintiff alleged specific acts of adultery between her husband and Mrs. Northcutt on November 8, 9, 10, 11, and 12 of 1968. Plaintiff also alleged in a supplemental petition that defendant had committed numerous acts of adultery prior to November 8, 1968, without alleging the precise dates but merely stating that the acts took place in Mrs. Northcutt’s home.
*262 Numerous witnesses testified that the defendant frequented the residence of Mrs. Northcutt and was a regular visitor there. Most of this testimony was limited to the observation of the defendant going to the Northcutt home, staying, and then his departure from the house. Most of the witnesses, of course, could not testify as to what occurred in the home. The son of Mrs. Northcutt did testify that Mr. Havens, the defendant, had slept in his mother’s bed the morning of November 13, 1968. Mr. Woodrow Cooley testified to numerous incidents of the defendant’s visiting Mrs. Northcutt’s home and staying there at night. The following testimony by Mr. Cooley, in response to questions of the trial court, is typical of that given by him and other witnesses for the plaintiff at the trial. (Tr. 110.)
BY THE COURT:
“Q. Mr. Cooley, let me ask you a question. Did you see Mr. Havens on November 10?
“A. Well, I don’t know about the 10th, but I did see him on November 12th, because me and my oldest brother got up that night and we, heerd something roaring, and we got up and Mr. Northcutt was sitting at the cattleguard in front of Mrs. Northcutt’s house at four o’clock in the morning and when daylight come the children went out and woke him up and talked to him, and Mr. Havens was at her house and spent the night there that night. He was in there that night and stayed there.
“Q. How do you know that was the 12th of November, 1968?
“A. It was that night, and Mr. North-cutt was killed the next day. He went out behind the school bus the next morning and Mr. Havens went out behind him and Mrs. Northcutt went behind Mr. Havens. They passed right by my house.”
Mr. Walden Cooley, brother of Woodrow Cooley, testified that he had seen the defendant go to Mrs. Northcutt’s house on several occasions. In his words, not only was defendant present on November 11th, 12th, and 13th, “but he stayed there for six months or longer.” (Tr. 135.) He made this quite clear when questioned by the court. (Tr. 136.)
BY THE COURT:
“Q. Now, how long had it been prior to that day (November 13th) that you saw Mr. Havens?
“A. Well, that’s what I say, I’d seen him every day for six months that he passed there going out to his work in the mornings because he worked at night at Fort Polk. He would come in at night so I would see him the next morning.”
Both of the Cooley brothers testified, in effect, that Mr. Havens had been practically living at the Northcutt house for a period of at least six months. Mr. Herman Cooley, brother of Woodrow and Walden, also testified to seeing the defendant’s vehicle there on numerous occasions. Mr. C. E. Simmons, who lives right across from the Northcutts, testified to the same effect — that he had seen Mr. Havens there several times, in fact, “Many, many times. That went on for about eight or ten months, two. or three times a week.” In addition, Mr. Havens himself admitted to acts of adultery with Mrs. Northcutt approximately one year prior to the incidents alleged in the plaintiff’s petition.
The trial court rejected all testimony pertaining to incidents prior to November 8, 1968, because the allegations concerning those acts were not alleged with sufficient particularity. However, such evidence is admissible to corroborate allegations which have been specifically and particularly alleged. Louisiana Civil Code Article 153. De Jean v. De Bose, 226 La. 600, 76 So.2d 900 (1954); Schoeffner *263 v. Schoeffner, 158 La. 933, 105 So. 18 (1925).
There was no direct evidence of adultery on the part of Mr. Havens. The closest thing to it was the testimony of Mrs. Northcutt’s son that Mr. Havens had slept in his mother’s bed. The trial court was apparently of the opinion that circum-stancial evidence is not sufficient to prove an act of adultery. In the second paragraph of its reasons for judgment, the court said: “First considering the allegations of adultery. It is obvious from the testimony and facial expressions of the neighbors of Mrs. Trellis Northcutt that these people surmise that Andy Havens committed adultery with Mrs. Trellis Northcutt on at least one of the dates alleged in the petition as well as on other occasions. I will borrow an oral statement from the late W. W. Thompson of this district, ‘We, as people, can surmise a lot of things, but our surmises might well be wrong.’ For this reason, the legal proof of adultery against Andy Havens is insufficient to prove the case of adultery.” (Tr. 75.)
However, acts of adultery can be proven by circumstantial and indirect evidence. Harris v. Harris, 228 La. 19, 81 So.2d 705 (1955); Kieffer v. Heriard, 221 La. 151, 58 So.2d 836 (1952). At page 838 of the Kieffer case, the Supreme Court stated: “Due to the secrecy attendant upon the act of adultery, it can rarely be established by direct evidence, and the firmly established jurisprudence is to the effect that, ‘In actions for divorce, courts must take such evidence as the nature of the case permits, circumstantial, direct, or positive, and bring to bear upon it the experiences and observations of life, and thus weighing it with prudence and care give effect to its just preponderance.’ ” Several cases cited.
An application of the above standards to the evidence adduced at the trial of the instant case can lead to no conclusion other than that the defendant in fact committed the alleged acts of adultery with Mrs. Northcutt.
Conversely, there is little evidence, direct or circumstantial, to support the defendant’s allegations that the plaintiff also committed adultery. As the trial court said in its reasons for judgment: “On this charge of adultery against Mrs. Marie Havens, I can only say that the charge is ridiculous from a legal standpoint.” Mrs. Havens is therefore entitled to a judgment of divorce against the defendant.
Mrs. Havens requested an award of $200.00 per month for alimony. On the basis of the defendant’s salary of more than $400.00 per month and Mrs. Havens’ inability to support herself, an award of $150.00 per month for alimony is proper.
Plaintiff is also entitled to reasonable attorney fees to be paid from the assets of the community of acquets and gains existing between the parties. An award of $750.00 is justified at this stage of the litigation.
For the foregoing reasons, the judgment of the trial court is reversed and the plaintiff is hereby granted a judgment of absolute divorce from the defendant, alimony of $150.00 per month to be paid by the defendant, and attorney fees of $750.00 to be charged to the community property. All costs of this appeal are assessed against the defendant-appellee.
Reversed.