(November 17, 1966)

Suzan F. Farkas, Appellant, v. Alexander S. Farkas, Respondent, et al., Defendant.

Memorandum by the Court. Judgment appealed from affirmed, without costs or disbursements to either party. The parties hereto were married October 13, 1962. Prior to such marriage they had entered into a prenuptial agreement dated September 27, 1962. Shortly after the marriage the parties separated and by a separation agreement dated November 17, 1962 the defendant husband agreed to pay the plaintiff the sum of $1,250 per month for her support and maintenance. On or about January 25, 1963 the parties entered into a so-called reconciliation agreement. Plaintiff contends that thereafter the parties resumed their marital relationship as husband and wife, a contention which defendant disputes. The trial court, after a trial of the issues, concluded that the evidence did not support the plaintiff's claim and held the separation agreement of November 17, 1962 still effective. We are all agreed that mere cohabitation and sexual intercourse between the parties, following upon the execution of the separation agreement, would not vitiate such agreement. There must be proof of an intention to abandon the separation agreement. There is a division of opinion as to whether there was such proof. In our view there was not. There was ample evidence in the record which warranted the conclusion reached by the trial court as to the validity of the separation agreement. Following upon the separation and prior to the execution of the reconciliation agreement the plaintiff moved into a hotel. During that time there was testimony of sexual intercourse between the parties and this continued after the execution of the reconciliation agreement. Following upon the execution of such agreement the plaintiff continued to reside in the hotel until about March, 1963 and paid the rent therefor out of the $1,250 per month which she continued to receive from the defendant. Defendant also continued to maintain an apartment in Sutton Place. On or about March, 1963 the plaintiff moved into an apartment at 1192 Park Avenue on a three-month sublease signed by defendant. Each paid half of the rent but meanwhile defendant continued to maintain a separate apartment. By plaintiff's own testimony defendant did not spend every night in the Park Avenue apartment, and she in fact served as hostess on at least one occasion for a dinner party given by defendant at his Sutton Place apartment. It should be noted that during the entire interval the plaintiff continued to receive the sum of $1,250 per month. There was credible testimony that plaintiff, as a condition to resumption of full marital relationship, demanded a revision of the antenuptial agreement and that the defendant refused to consent thereto. Since intention is a question of fact to be resolved not only from any available documentary evidence, but the acts and expression of the parties as well, the trial court was warranted in concluding as it did that the evidence failed to support plaintiff's contention.

Rabin, J. (dissenting). In affirming the judgment of Special Term, this court, of necessity, must have approved of the finding that "the separation agreement being in full force and effect, [the wife's] support is limited as set forth in that agreement."

It is because I cannot come to that conclusion, but believe that the separation agreement was vitiated by the parties' reconciliation subsequent to its execution, that I dissent.

It is quite true that mere cohabitation in and of itself does not effect a reconciliation. It is the intention of the parties that governs. If they intended to abandon the separation and resume their marital relationship that is quite sufficient to vitiate the separation agreement. Cohabitation can be said to be some evidence of that intention. But here we have more than that. We have a writing where the parties not only say that they intend to reconcile their marital differences but that they have *already* "reconciled their marital differences".

While it is asserted that the reconciliation agreement is void because it contains provisions with respect to the support of the wife that are unenforcible, it does not affect the value of that agreement as an indication of the intention of the parties. Nor does it change the acknowledgment contained in the agreement that the parties had already reconciled their differences. That they had done so is supported by the fact that following the separation, and prior to the acknowledgment in the reconciliation agreement, they vacationed in Florida as man and wife. If they did so in a state of reconciliation, that in and of itself would then effect a nullification of the separation agreement *regardless of subsequent events*. We need not seek to find the intent of the parties in that respect because they tell us what it was — formally and in writing. The legal effect of such reconciliation attaches, and the fact that the agreement provides, in effect, that the separation agreement survives for the purpose of again becoming effective in the event of a possible subsequent separation, is of no consequence.

Subsequent to the reconciliation agreement they vacationed in Nevada and lived there as man and wife. It should be noted that on that trip the husband was accompanied by his son of a prior marriage, and the wife was accompanied by her daughter of a prior marriage.

The joint vacation taken before the reconciliation agreement was executed sustains the statement in that agreement that the parties had already been reconciled, and the trip subsequent to the execution of the reconciliation agreement — and indeed their more than sporadic, but rather regular cohabitation for an extended period in an apartment leased by the husband and in which he kept his clothes and belongings — indicate implementation of their agreement and of their acknowledged intention "to restore, resume, continue, maintain and promote their marital relationship".

Now, after a second separation the husband, contrary to his written acknowledgment, seeks to term the relationship as a meretricious one. He tries to justify registering as man and wife by stating that it followed the pattern of registration by those who are indeed in a meretricious relationship. I refuse to evaluate the relationship between this man and woman, legally married, by so low a moral standard. I am quite certain that the wife did not so consider it. Moreover, evidence that neither party so considered it, is the fact that they took their children with them on one of these trips. I am loath to believe that they would have done so if their relationship were not deemed by them to have been a proper one. In attempting to now cast it in a different light the husband would evince such complete and callous disregard for acceptable conduct as to warrant disbelief of his present assertion. In all, in these circumstances there is no reason why we should fail to find an intention to resume the marital relationship in accordance with the formally expressed enunciation of such intention by the parties.

Accordingly, I would find the separation agreement to have been vitiated, the parties having been reconciled, and I would remand the case for further consideration in the light of this finding.

A word with respect to that portion of the judgment which declares that the "ante-nuptial agreement * * * insofar as it attempts to specify the maintenance and support of the plaintiff during the marriage of the parties, or to limit the measure of support * * * be, and the same hereby is * * * declared to be invalid, null, void and of no legal force and effect whatever". There is no reason for the court to have made a finding in that respect. The issue as to the validity of the antenuptial agreement was not raised by the pleadings. The testimony with respect to that agreement was given only to support the husband's contention that it was the wife who was the cause of the original separation because of her insistence that the husband cancel the antenuptial agreement. It was not offered for the purpose of having a declaration made of its validity or invalidity. That portion of the judgment with respect to that agreement should be stricken.

In any event what the court did find was harmless. While the judgment declared the agreement void "insofar as it attempts to * * * limit the measure of support", there is no finding that any clause in the antenuptial agreement did tend to limit the support of the wife. It is my view that the $1,000 monthly payment to the wife, provided for in the agreement, was part consideration for the waiver of the wife's right of election and nothing more. There is no language in that agreement referring to the support of the wife. Indeed, in view of the reference to the husband as being a multimillionaire, it is inconceivable that it was the intention of the parties that his measure of support be limited to $1,000 per month.

Accordingly, I would reverse the findings of Special Term; vacate the judgment and remand the matter for further consideration, not inconsistent with this opinion.

Breitel, J. P., Stevens, Capozzoli and Bastow, JJ., concur in Memorandum By The Court; Rabin, J., dissents in opinion.

Judgment appealed from affirmed, without costs or disbursements to either party, etc. [47 Misc 2d 827.]